Chisum v. Campagna, 2019 NCBC 27.

STATE OF NORTH CAROLINA

NEW HANOVER COUNTY

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
16 CVS 2419

DENNIS D. CHISUM, individually
and derivatively on behalf of JUDGES
ROAD INDUSTRIAL PARK, LLC;
CAROLINA COAST HOLDINGS,
LLC; and PARKWAY BUSINESS
PARK, LLC,

Plaintiff,

v.

ROCCO J. CAMPAGNA; RICHARD J.
CAMPAGNA; JUDGES ROAD
INDUSTRIAL PARK, LLC;
CAROLINA COAST HOLDINGS,
LLC; and PARKWAY BUSINESS
PARK, LLC,

Defendants.

**ORDER AND OPINION ON POST-
TRIAL MOTIONS**

THIS MATTER comes before the Court on the following motions filed by

Plaintiff and Defendants following trial in this case:

- Defendants' Motion for Judgment Notwithstanding the Verdict
  ("Defendants' JNOV Motion", ECF No. 268);

- Defendants' Alternative Motion for New Trial ("Defendants' New Trial
  Motion", ECF No. 270);

- Plaintiff's Post-Trial Motion ("Plaintiff's Motion", ECF No. 277);

- Plaintiff's Motion to Bar Campagnas from Sharing in Punitive Damage
  Award  ("Plaintiff's Motion to Bar Punitives", ECF No. 261);

- Defendants' Alternative Motion to Alter or Amend the Judgment ("Defendants' Motion to Amend", ECF No. 272); and

- Defendants' Motion for Relief from Orders Appointing Receiver ("Defendants' Motion for Relief", ECF No. 274).

(Collectively the Defendants' JNOV Motion, Defendants' New Trial Motion, Plaintiff's Motion, Plaintiff's Motion to Bar Punitives, Defendants' Motion for Relief, and Defendants' Motion to Amend are "the Post-Trial Motions".)

THE COURT, having considered the Motions, the briefs filed by the parties in support of and opposition to the Post-Trial Motions, the exhibits filed with certain of the Motions, and other appropriate matters of record, CONCLUDES that Defendants' JNOV Motion, Defendants' New Trial Motion, Plaintiff's Motion to Bar Punitives, and Defendants' Motion for Relief should be DENIED, and that Defendants' Motion to Amend should be GRANTED, in part, and DENIED, in part, in the manner and for the reasons set forth below.

## I. INTRODUCTION

1. The procedural history of this long and arduous case is set out in the many orders issued by the Court in this matter, including the orders on dispositive motions, and will not be repeated here.

2. The trial of this case took place from August 6, 2018 through August 15, 2018 in the Superior Court of New Hanover County. Plaintiff Dennis D. Chisum's ("Plaintiff") derivative claims for breach of fiduciary duty and constructive fraud on behalf of Judges Road Industrial Park, LLC ("Judges Road") and Parkway Business

Park, LLC ("Parkway"), Plaintiff's theory of civil conspiracy, and his individual claim for failure to pay distributions, were submitted to the jury. Certain issues of fact underlying Plaintiff's claims for declaratory judgment were also submitted to the jury, but the Court decided the legal issues underlying those claims. The Court also decided Plaintiff's claim for judicial dissolution.

3. At trial, the Court directed verdicts for the Defendants on Plaintiff's claims relating to Carolina Coast Holdings, LLC ("CCH") on the grounds that the evidence at trial established as a matter of law that Plaintiff's claim for declaratory judgment regarding CCH was filed after the applicable statute of limitations expired. The Court also directed a verdict against Plaintiff on the issue of whether non-parties James A. MacDonald ("MacDonald") and Milton R. Hardison ("Hardison") were participants in an alleged conspiracy with Defendants Rocco J. Campagna ("Rocco") and Richard J. Campagna ("Richard") (collectively, Rocco and Richard are "the Campagnas"). Finally, the Court dismissed Defendants' equitable defense of laches as a sanction imposed against Defendants based on evidence uncovered during trial of discovery abuses, pursuant to Rule 26 of the North Carolina Rules of Civil Procedure (hereinafter "Rule(s)"). N.C. Gen. Stat. § 1A-1, Rule 26.

4. On August 15, 2018, the jury returned its verdict on the issues of liability and damages submitted as follows:

1. Did Dennis Chisum file this lawsuit within three years of the date that he knew, or reasonably should have known, that the Campagnas no longer considered Dennis Chisum to be a member of Parkway and were excluding him from his membership rights in Parkway?

   Yes.

2. Was Parkway damaged by a failure of Richard Campagna to discharge his fiduciary duties as manager of the company?

   Yes.

3. Did Richard Campagna take advantage of a position of trust and confidence to bring about the transfer of money and real property from Parkway to himself or his other companies, including the Camp Group, LLC?

   Yes.

4. What amount, if any, is Parkway entitled to recover from Richard Campagna as damages?

   $128,757.00

5. Was Parkway damaged by a failure of Rocco Campagna to discharge his fiduciary duties as manager of the company?

   No.

6. Did Rocco Campagna take advantage of a position of trust and confidence to bring about the transfer of money and real property from Parkway to himself or his other companies, including the Camp Group, LLC?

   Yes.

7. What amount, if any, is Parkway entitled to recover from Rocco Campagna as damages?

   $128,757.00

8. Did Dennis Chisum file this lawsuit within three years of the date that he knew, or reasonably should have known, that the Campagnas no longer considered Dennis Chisum to be a member of Judges Road and were excluding him from his membership rights in Judges Road?

   Yes.

9. Was Judges Road damaged by a failure of Richard Campagna to discharge his fiduciary duties as manager of the company?

   Yes.

10. Did Richard Campagna take advantage of a position of trust and confidence to bring about the transfer of money from Judges Road to himself or his other companies, including the Camp Group, LLC?

Yes.

11. What amount, if any, is Judges Road entitled to recover from Richard Campagna as damages?

$1.00

12. Was Judges Road damaged by a failure of Rocco Campagna to discharge his fiduciary duties as manager of the company?

No.

13. Did Rocco Campagna take advantage of a position of trust and confidence to bring about the transfer of money from Judges Road to himself or his other companies, including the Camp Group, LLC?

Yes.

14. What amount, if any, is Judges Road entitled to recover from Rocco Campagna as damages?

$1.00

15. Did Richard Campagna and Rocco Campagna conspire to divert money and property from Parkway to the Camp Group, LLC?

No.

16. Did Richard Campagna and Rocco Campagna conspire to divert money and property from Judges Road to the Camp Group, LLC?

Yes.

17. What amount of unpaid distributions is Dennis Chisum entitled to receive from Parkway?

$10,695.00

18. What amount of unpaid distributions is Dennis Chisum entitled to receive from Judges Road?

    $3,927.00

5.      On August 16, 2018, the jury returned its verdict on the issues of punitive damages submitted as follows:

19. Is Richard Campagna liable to Parkway for punitive damages?

    Yes.

20. What amount of punitive damages, if any, does the jury in its discretion award against Richard Campagna to Parkway?

    $150,000.00

21. Is Richard Campagna liable to Judges Road for punitive damages?

    Yes.

22. What amount of punitive damages, if any, does the jury in its discretion award against Richard Campagna to Judges Road?

    $350,000.00

23. Is Rocco Campagna liable to Parkway for punitive damages?

    No.

24. What amount of punitive damages, if any, does the jury in its discretion award against Rocco Campagna to Parkway?

    N/A

25. Is Rocco Campagna liable to Judges Road for punitive damages?

    Yes.

26. What amount of punitive damages, if any, does the jury in its discretion award against Rocco Campagna to Judges Road?

    $250,000.00

6.      On October 4, 2018, prior to entry of the final judgment, Plaintiff filed the Motion to Bar Punitives, and an accompanying brief in support.  (Pl. Br. Supp. Mot. Bar Pun., ECF No. 262.)  On November 13, 2018, Defendants filed a response in opposition to Plaintiff's Motion to Bar Punitives, (Def. Br. Opp. Pl. Mot. Bar Pun., ECF No. 285), and Plaintiff subsequently filed a reply brief.  (Pl. Reply Supp. Post-Trial Mots., ECF No. 297.)

7.      On October 11, 2018, the Court entered a Final Judgment on the jury's verdicts and on Plaintiff's claim for declaratory judgment declaring that Plaintiff remains a member of Parkway with a current percentage of ownership in the company of 8.34%, and that Plaintiff remains a member of Judges Road with a current percentage of ownership in the company of 18.884%.  The Court also granted Plaintiff's request for judicial dissolution of Parkway and Judges Road pursuant to N.C. Gen. Stat. (hereinafter "G.S.") § 57D-6-02(2)(i).  (Final Judgment, ECF No. 264.)

8.      Simultaneously with the Final Judgment, and in order to facilitate execution of the judgment, the Court issued an Order Appointing Receiver for Parkway (Parkway Recv'r Order, ECF No. 265), and an Order Appointing Receiver for Judges Road (Judges Road Recv'r Order, ECF No. 266) (collectively, "the Receiver Orders").  The Receiver Orders directed the Receiver to: apply to the Secretary of State of North Carolina for reinstatement of Parkway as an active LLC; collect the judgments on behalf of Judges Road and Parkway; marshal the assets of the two companies and pay creditors; and wind up and distribute any remaining assets to the

members.  The Receiver Orders further directed that Richard and Rocco would be jointly and severally liable for paying the fees and costs of the receiver.

9.  On October 22, 2018, Defendants filed a Motion to Stay Proceedings to Enforce Judgment, ("Motion to Stay", ECF No. 276), and on November 13, 2018, Plaintiff filed a Memorandum in Opposition to the Motion to Stay (ECF No. 282).  On December 5, 2018, the Court stayed enforcement of the judgment, including the Receiver's authority over Parkway and Judges Road, and directed the Campagnas to post a bond of $600,000.00.  (ECF No. 300.)  On the Campagnas' request, the Court subsequently extended the time for the Campagnas to post the bond, but in the meantime reinstated the Receiver's authority to oversee the day-to-day operations of Parkway and Judges Road.  (ECF No. 308.)

10.  On February 6, 2019, Defendants posted the required bond.  (ECF No. 315.)  On the same date, the Court issued an Order Divesting Receiver of Authority pending further order of the Court.  (ECF No. 316.)

11.  On October 22, 2018, the parties filed the following motions:

a.  Defendants' JNOV Motion, along with a memorandum in support, (ECF No. 269), and Defendants' New Trial Motion with a memorandum in support, (ECF No. 271).  Defendants' JNOV Motion and New Trial Motion are fully briefed.  (Pl. Br. Op. Defs. JNOV and New Trial Mots., ECF No. 283; Defs. Reply Supp. JNOV and New Trial Mots., ECF No. 295.)

b. Plaintiff's Motion, along with memorandum in support. (ECF No. 278.) Plaintiff's Motion is fully briefed. (Defs. Mot. Opp. Pl. post-trial Mot., ECF No. 287; Pl. Reply Supp. post-trial Mot., ECF No. 297.)

c. Defendants' Motion to Amend, along with a supporting brief. (ECF No. 273.) Defendants' Motion to Amend is fully briefed. (Pl. Br. Opp. Defs. Mot. Amend, ECF No. 284; Defs. Reply Supp. Mot. Amend, ECF No. 293.)

d. Defendants' Motion for Relief, along with a supporting brief. (ECF No. 275.) Defendants' Motion for Relief is fully briefed. (Pl. Br. Opp. Defs. Mot. Relief, ECF No. 286; Defs. Reply Supp. Mot. Relief, ECF No. 296.)

12. The Post-Trial Motions are now ripe for determination. Pursuant to North Carolina Business Court Rule 7.4, the Court decides the Post-Trial Motions without hearing.

## II. EVIDENCE AT TRIAL

13. Plaintiff and Defendants presented testimonial and documentary evidence during trial.

14. The evidence showed that Plaintiff and the Campagnas first entered into a business relationship in the late 1990s, and subsequently formed CCH, Parkway, and Judges Road to develop commercial real estate in and around Wilmington, North Carolina. (Hereinafter, CCH, Parkway, and Judges Road will be collectively referred to as "the Chisum/Campagna LLCs").

15.     Over time, the Chisum/Campagna LLCs acquired ownership in several pieces of commercial property in and around New Hanover County.  Richard and Rocco acted as, and were listed in much of the documentary evidence as, both members and the managers of the Chisum/Campagna LLCs.  The evidence, however, suggested that Richard tended to take the lead role in managing the companies.  Plaintiff was a member, but not a manager, of the Chisum/Campagna LLCs.

16.     Plaintiff and the Campagnas entered into written Operating Agreements for each of the Chisum/Campagna LLCs.  (Judges Road Op. Ag., Jt. Ex. 1; CCH Op. Ag., Jt. Ex. 10; Parkway Op. Ag., Jt. Ex. 19.)[1]  The testimony showed that Plaintiff, Richard, and Rocco were not well-versed in the contents of the Operating Agreements, although Plaintiff testified that he had past experience as member of numerous LLCs and knew generally how to read and understand operating agreements.

17.     The Campagnas claimed they primarily relied on MacDonald, the attorney for the LLCs[2], to guide them as to the requirements of the Operating Agreements.     Nevertheless, Richard admitted that the business of the Chisum/Campagna LLCs was supposed to be conducted in conformance with the Operating Agreements.

---

[1]At trial, the parties presented a set of Joint Trial Exhibits (hereinafter referred to as "Jt. Ex"), Plaintiff presented a set of Plaintiff's Exhibits (hereinafter referred to as "Pl. Ex."), and Defendants presented a set of Defendants' Exhibits (hereinafter referred to as "Defs. Ex.").
[2]MacDonald was also Plaintiff's personal attorney with regard to numerous matters, including, according to Plaintiff, advising Plaintiff in business matters and regarding his involvement in the Chisum/Campagna LLCs.

18. At various times after their formation, Plaintiff sold and assigned portions of his membership interests in the various Chisum/Campagna LLCs to the Campagnas. Following all of the sales and assignments, Plaintiff held a 16.67% membership interest in CCH, an 8.34% membership interest in Parkway, and an 18.884% membership interest in Judges Road. (Jt. Exs. 1, 10, and 19.)

19. On October 4, 2010, a meeting of the members of CCH was held to discuss repayment of a loan made to Plaintiff by SunTrust Bank and secured by property held by the Chisum/Campagna LLCs. (Notice of Member Meeting, Jt. Ex. 25; Minutes of Oct. 4, 2010 Meeting, Jt. Ex. 27.) Plaintiff, the Campagnas, and MacDonald attended the meeting. At the meeting, Plaintiff stated that he did not believe the loan was his individual responsibility, and that he could not, and would not, repay the loan. (Jt. Ex. 27; Oct. 7, 2010 MacDonald letter to Plaintiff, Ex. 26.) At the meeting, a motion was made and carried to assess a capital call on Plaintiff in the amount of $63,500. Plaintiff was given seven days to make the required capital contribution, and Plaintiff was notified that if he failed to do so, the other members would make the contribution on his behalf and diminish Plaintiff's membership interest in CCH accordingly. (*Id*.)

20. Plaintiff did not make the capital contribution to CCH. On October 27, 2010, the Campagnas paid off the SunTrust loan. (Pl. Ex. 234.)

21. Following the meeting on October 4, 2010, the Campagnas treated Plaintiff as if his membership interest in CCH had been extinguished, and conducted

CCH's business as if they were its only two members. The Campagnas and Plaintiff had no further contact with one another regarding CCH.

22. The CCH Operating Agreement did not permit a member's interest to be entirely extinguished for failure to meet a capital call. (Order on Pl.'s Third Mot. for SJ, ECF No. 189, at p. 11.) The Campagnas never amended the CCH Operating Agreement to reflect that Plaintiff's membership interest was extinguished. Nevertheless, the Campagnas claimed that they had the right to extinguish Plaintiff's membership interest in CCH, and treated Plaintiff as if he were no longer a member of CCH. In addition, Plaintiff testified that after October 2010, he never attended any further meetings of any of the Chisum/Campagna LLCs.

23. The CCH Operating Agreement required the company to send to each member the United States Internal Revenue Service ("IRS") form K-1 annually for the previous fiscal (calendar) year. (Jt. Ex. 10, at § 9.9.) In October 2011, Plaintiff received his 2010 IRS form K-1 for CCH. (Jt. Ex. 11.) The K-1 form was marked as the "final" K-1 that Chisum would receive for CCH, and showed that his membership interest had been reduced from 16.67% at the beginning of 2010 to no membership interest at the end of 2010. (*Id*.) Plaintiff claimed that he believed the 2010 K-1 was in error, but admitted he took no steps at that time to seek an explanation or clarification of the information on the form. The 2010 form K-1 was the last K-1 Plaintiff received from CCH. (Aff. of Plaintiff, Defs. Ex. 385.)

24. Plaintiff testified that he understood no later than when he received the 2010 CCH K-1 that the Campagnas believed they had extinguished his membership in CCH, but that he was not concerned about it because he believed they were wrong.

25. On June 25, 2012, MacDonald mailed a letter to Plaintiff at his home address notifying Plaintiff that Judges Road was making a capital call on all members. (Letter and Notice, Jt. Exs. 28, 29.) The letter stated that the capital call was in the amount of $100,000, and advised Plaintiff that his personal share would be $16,666.66. (Jt. Ex. 28.) The Notice of Capital Call required Plaintiff to make the capital contribution on or before 9:00 a.m. on July 2, 2012. (Jt. Ex. 29.) The letter stated that "[b]ased on the information provided by the accountant Rick and Rocky have been advised by the accountant that your interest has been diluted to the point that you have no remaining equity in the Company. If you do not participate in this capital call, you will no longer be deemed a member and your interest will be considered diluted in full." (Jt. Ex. 28.) Finally, the letter advised Plaintiff that a meeting of Judges Road's members was to be held at MacDonald's office at 10:00 a.m. on July 2, 2012. (*Id.*)

26. The Judges Road Operating Agreement required that notices were to be provided to members by personal delivery, overnight courier, prepaid registered or certified U.S. Mail, or via "telecopier or other similar device." (Jt. Ex. 1, at p. 23.) MacDonald admitted he does not know if the letter and notice were sent by one of the required methods. Plaintiff testified that he never received the June 25, 2012 letter or the Notice of Capital Call.

27.     On July 2, 2012, the Campagnas held a members meeting of Judges Road.  (Minutes of July 2, 2012 Meeting, Jt. Ex. 30.)  Richard, Rocco, and MacDonald attended the meeting.  Plaintiff did not attend.  Despite MacDonald's warning that Plaintiff's membership interest "would be considered diluted in full[,]" (Jt. Ex. 28), if Plaintiff did not contribute the required capital, the minutes of the July 2, 2012 meeting state Plaintiff's interest was only "dilute[d]," and would not be extinguished unless he failed to meet the next Judges Road capital call.  The July 2, 2012, meeting minutes provide as follows:

> The Members proceeded to discuss Dennis Chisum's failure to meet his capital calls in a timely manner.  A motion was made by Rocco Campagna and seconded by Rick Campagna to direct the Company's accountant to dilute the membership interest of Dennis Chisum for his failure to meet and make his outstanding and delinquent capital call of $16,666.66.
>
> The attending members further discussed that the defaulting member, Dennis Chisum's membership interest would be exhausted and extinguished if future capital calls were not timely made.
>
> The attending members appointed Rick Campagna to direct the Company's accountant to dilute the shares of member Dennis Chisum, corresponding to the capital calls which he failed to meet.

(Jt. Ex. 30.)

28.     The Campagnas did not send Plaintiff any further correspondence or otherwise notify him that they considered his membership rights in Judges Road and Parkway to have been extinguished by his failure to meet the Judges Road capital call and attend the July 2, 2012 Judges Road meeting.  The Campagnas never amended the Judges Road or Parkway Operating Agreements to reflect that

Plaintiff's membership interest was extinguished. (Jan. 12, 2016 Email from Richard, Pl. Ex. 137.)

29. Richard testified that following the July 2, 2012 meeting of Judges Road, the Campagnas took control of Judges Road and Parkway, and did not further involve Plaintiff in the operations of Judges Road or Parkway. Defendants did not present evidence that Plaintiff's membership in Parkway was extinguished because of Plaintiff's failure to meet a capital call for Parkway, or by any other means. Rather, Richard testified generally that he and Rocco simply believed Plaintiff was no longer a member of the Chisum/Campagna LLCs because Plaintiff had not participated in the LLCs' activities nor had any contact with the Campagnas since October 2010.

30. Judges Road and Parkway continued to send Plaintiff form K-1s for tax years through 2013. (2010-2013 K-1 forms, Jt. Exs. 2 and 20.) On August 27, 2013, Parkway mailed Plaintiff's 2012 Parkway K-1 to Plaintiff at his home address. (Aug. 27, 2013 Letter to Plaintiff with 2012 Parkway K-1 form, Pl. Ex. 142.) The 2012 Parkway K-1 shows that Plaintiff still had an 8.34% membership interest in Parkway at the end of 2012. (*Id.*)

31. Sometime in 2014, Parkway sent Plaintiff his 2013 Parkway K-1. Plaintiff claimed he received the 2013 Parkway K-1 in or around October 2014, but the letter transmitting the K-1 form to Plaintiff's home address is dated April 7, 2014. (Apr. 7, 2014 Letter to Plaintiff with 2013 Parkway K-1 form, Pl. Ex. 196.) The 2013 Parkway K-1 is marked as Plaintiff's "final" K-1, and shows that he held an 8.34%

membership interest at the beginning of 2013, but no membership interest at the end of 2013. (*Id.*)

32. On August 27, 2013, Judges Road mailed Plaintiff's 2012 Judges Road K-1 to Plaintiff at his home address. (8/27/13 Letter to Plaintiff with 2012 K-1 form, Pl. Ex. 143.) Plaintiff's 2012 Judges Road K-1 shows that he still had an 18.884% membership interest in Judges Road at the end of 2012. (*Id.*)

33. Sometime in 2014, Judges Road sent Plaintiff his 2013 Judges Road K-1 form. (Jt. Ex. 2.) Plaintiff's 2013 Judges Road K-1 is marked as Plaintiff's "final" K-l, and shows that he held an 18.884% membership interest at the beginning of 2013, but no membership interest at the end of 2013. (*Id.*)

34. Plaintiff testified that he did not take action to determine the status of his membership interests in the Chisum/Campagna LLCs until after February 2016, after he was unable to access the mini-storage facility owned by Judges Road. Plaintiff testified that he had been provided a complimentary storage unit at the facility for several years as a perk of his membership in Judges Road. When Plaintiff could not access the mini-storage facility, he checked New Hanover County tax records and discovered that the property had been sold by Judges Road to a third-party buyer. The property was sold on February 1, 2016. (Pl. Ex. 188.) The buyer paid Judges Road $5,750,000.00 for the property, and Judges Road received cash from the seller in the amount of $4,096,657.14. (*Id.*) Plaintiff testified that once he learned that Judges Road had sold the mini-storage facility, he finally had to "take action."

35. Plaintiff filed this lawsuit on July 2, 2016.

36. At trial, Defendants introduced evidence in an attempt to establish that Plaintiff knew that the Campagnas considered his membership interests in the Chisum/Campagna LLCs to be extinguished long before he filed the lawsuit in July of 2016. On September 18, 2013, Plaintiff's wife, Blanche Chisum ("Blanche"), sent an email to Plaintiff's personal accountant asking him to provide information about Plaintiff's status as a member of the Chisum/Campagna LLCs. (9/18/13 Email from B. Chisum, Jt. Ex. 41.) In the email, Blanche stated that Hardison, the accountant for the Chisum/Campagna LLCs, told her that Plaintiff no longer had any ownership in the Chisum/Campagna LLCs, but that MacDonald told her Plaintiff still had ownership interests in the LLCs. (*Id.*) If Plaintiff's personal accountant provided a response to Blanche's email, it was not introduced into evidence.

37. Defendants also introduced into evidence the IRS file regarding a tax deficiency assessed against Plaintiff and Blanche for tax years 2008 and 2010. (IRS Record, Defs. Ex. 356.) The Chisums settled the dispute by compromise with the IRS on April 15, 2015. (*Id.* at pp. 3–5.) The records presented showed that Plaintiff and Blanche compromised a tax debt of $29,035.00 for $3,002.00. (*Id.*) During negotiations with the IRS, the IRS specifically requested information about Plaintiff's ownership interest in the Chisum/Campagna LLCs. (*Id.* at pp. 405–08.) In response to this request, Plaintiff and Blanche sent a summary of their business ownership interests to Plaintiff's personal accountant to provide to the IRS on December 11, 2014. (Defs. Ex. 310.) The summary prepared by the Chisums indicated that, although Plaintiff had once owned an interest in CCH and Parkway, he was "no

longer associated" with those LLCs.  (*Id.*)  The summary did not provide any information on any ownership interest in Judges Road.  The summary was provided to the IRS by Plaintiff's personal accountant.  (Defs. Ex. 356, at p. 211.)

38.  After July 2, 2012, the Campagnas sold and transferred property held by Parkway to the Camp Group, LLC ("Camp Group"), a company owned entirely by Richard and Rocco on a 50%/50% basis.  (Jan. 22, 2013 New Hanover County tax record, Jt. Ex. 43; Feb. 1, 2014 Settlement Statement, Pl. Ex. 188; Jan. 18, 2013 Settlement Statement, Pl. Ex. 216.)  The Campagnas did not notify Plaintiff of the sale of any of these properties, seek Plaintiff's approval for the sales, nor provide him a pro-rata share of any sales proceeds.

39.  After July 2, 2012, the Campagnas also made distributions to themselves from Parkway and Judges Road.  (*E.g.*, Richard's 2015 Judges Road K-1, Jt. Ex. 3; Rocco's 2015 Judges Road K-1, Jt. Ex. 4; Richard's 2014 Parkway K-1, Jt. Ex. 21; Rocco's 2014 Parkway K-1, Jt. Ex. 22.)  Parkway and Judges Road did not make distributions to Plaintiff from Parkway or Judges Road.

40.  The parties placed into evidence voluminous financial and tax records and financial documents of Parkway and Judges Road.  (*E.g.*, Jt. Exs. 14–18, 23, 24; Pl. Exs. 178, 214.)  These documents included the general ledgers detailing every financial transaction of Parkway and Judges Road from 2010 through 2017.  (Jt. Exs. 5, 14, 23.)  Plaintiff used these records to elicit testimony from Richard Campagna and from Hardison regarding alleged loans and other transfers of money made by Parkway and Judges Road to the Campagnas for various personal expenses.

Hardison admitted that he was not aware of any documentation supporting that the transactions characterized as loans were, in fact, loans.

41. During the trial, Plaintiff introduced into evidence documents produced by Defendants during discovery which Defendants claimed were: the minutes from the annual meetings of the members of Parkway, and waivers of the notices required by the Parkway Operating Agreement for annual meetings for 2015, (Pl. Ex. 215); the minutes from the annual meetings of the members of Judges Road for and waivers of the notice required by the Judges Road Operating Agreement for the annual meetings from 2013 through 2016, (Pl. Exs. 224–27); and minutes from the annual meetings of the members of CCH and waivers of notice required by the CCH Operating Agreements for the annual meetings from 2011 through 2015, (Pl. Exs. 219–23).

42. On August 7, 2018, during Richard's questioning by counsel for Plaintiff, Richard testified that the minutes and waivers were created contemporaneously with or immediately following each of the annual meetings described therein. Plaintiff's counsel questioned Richard about the fact that each of the meeting minutes documents contained the identical signatures of Richard and Rocco, and that each of their signatures appeared in exactly the same place on the signature lines for each document, though they were purportedly signed years apart. Richard could not explain the identical nature of the signatures, but insisted that they were created at the time of the meetings.

43. After an overnight break, on the morning of August 8, 2018, Richard returned to the witness stand and asked the Court to address the jury regarding his

testimony on the previous day. Richard claimed that he had been "confused" during his testimony on August 7, and that he now remembered the annual meeting minutes had not been created at the time of the meetings, but rather they had been fabricated in November 2016 in response to Plaintiff's discovery requests for documents. Richard claimed that he had been instructed by counsel that the Campagnas could create the meeting minutes at that time, back-dated for the prior years, for purposes of responding to the Plaintiff's requests. Defendants did not inform Plaintiff, in sending the discovery responses nor at any other time prior to trial, that the back-dated documents had actually been created in November 2016. Richard admitted that Defendants had no contemporaneous notes or other documents from which to recall the individual annual meetings, and that the dates of the meetings had been approximations based on the time of year when Richard and Rocco typically conducted an annual meeting.[3]

## III. ANALYSIS

44. The parties have filed the onerous jumble of post-trial Motions noted above. Several of the post-trial Motions request one or more alternative forms of relief, and are dependent on the Court's determinations of other motions. In addition, Plaintiff's Motion contains the verbatim argument that is raised in Plaintiff's Motion to Bar Punitives. The Court concludes that the most efficient method for deciding

---

[3]Based on Plaintiff's resulting motion for sanctions, the Court struck Defendants' laches defense as a discovery sanction pursuant to Rule 26(g). The evidence showed that Defendants' counsel referred Plaintiffs to the minutes in response to certain interrogatories propounded by Plaintiff during discovery, and used the minutes to question Plaintiff in his discovery deposition on February 20, 2017.

the post-trial motions is to first decide the Defendants' JNOV Motion and New Trial Motion, then Plaintiff's Motion and Plaintiff's Motion to Bar Punitives, followed by Defendants' Motion to Amend, and Defendants' Motion for Relief.

## A. Defendants' JNOV and New Trial Motions

45. Defendants filed separate JNOV and New Trial Motions. The Defendants' New Trial Motion seeks a new trial under Rule 59(a) as to each claim in the alternative to judgment being granted in their favor on each of the claims. (ECF No. 270.)

46. Rule 50(b)(1) provides, in relevant part, as follows:

> Whenever a motion for a directed verdict made at the close of all the evidence is denied or for any reason is not granted, the submission of the action to the jury shall be deemed to be subject to a later determination of the legal questions raised by the motion. Not later than 10 days after entry of judgment, a party who has moved for a directed verdict may move to have the verdict and any judgment entered thereon set aside and to have judgment entered in accordance with his motion for a directed verdict; or if a verdict was not returned such party, within 10 days after the jury has been discharged, may move for judgment in accordance with his motion for a directed verdict. In either case the motion shall be granted if it appears that the motion for directed verdict could properly have been granted. A motion for a new trial may be joined with this motion, or a new trial may be prayed for in the alternative. If a verdict was returned the judge may allow the judgment to stand or may set aside the judgment and either order a new trial or direct the entry of judgment as if the requested verdict had been directed.

47. "A motion for judgment notwithstanding the verdict is essentially a renewal of an earlier motion for directed verdict." *Scarborough v. Dillard's, Inc.*, 363 N.C. 715, 720, 693 S.E.2d 640, 643 (2009) (quotation marks omitted).

> A motion for JNOV provides the trial court with an opportunity to reconsider the question of the sufficiency of the evidence after the jury has returned a verdict and permits the court to enter judgment in accordance with the movant's earlier motion for a directed verdict and notwithstanding the contrary verdict actually returned by the jury.

*Primerica Life Ins. Co. v. Massengill & Sons Constr. Co.*, 211 N.C. App. 252, 256–57, 712 S.E.2d 670, 675 (2011) (quotation marks omitted). A motion for judgment notwithstanding the verdict tests the sufficiency of the evidence, taken in the light most favorable to the non-movant, to take the case to the jury and support a verdict for the non-movant. *Id.* at 257, 712 S.E.2d at 675. "The party moving for judgment notwithstanding the verdict, like the party seeking a directed verdict, bears a heavy burden under North Carolina law." *S. Shores Realty Servs., Inc. v. Miller*, 251 N.C. App 571, 578, 796 S.E.2d 340, 347–48 (2017) (quoting *Taylor v. Walker*, 320 N.C. 729, 733, 360 S.E.2d 796, 799 (1987)).

48. "A motion for either a directed verdict or JNOV should be denied if there is more than a scintilla of evidence supporting each element of the non-movant's claim." *Hewitt v. Hewitt*, 798 S.E.2d 796, 799, 2017 N.C. App. LEXIS 222, at \*9 (N.C. Ct. App. Apr. 4, 2017) (quoting *Shelton v. Steelcase, Inc.*, 197 N.C. App. 404, 410, 677 S.E.2d 485, 491 (2009)). "A scintilla of evidence is defined as very slight evidence[,]" *S. Shores Realty Servs., Inc.*, 251 N.C. App. at 578, 796 S.E.2d at 347, and "[t]he trial court must construe the evidence in the light most favorable to the non-movant and resolve all evidentiary conflicts in the non-movant's favor." *Morris v. Scenera Research, LLC*, 368 N.C. 857, 861, 788 S.E.2d 154, 158 (2016)). "[T]he questions concerning the sufficiency of the evidence to withstand a Rule 50 motion

for directed verdict or judgment notwithstanding the verdict present an issue of law, while a motion for a new trial for insufficiency of the evidence pursuant to Rule 59(a)(7) is addressed to the discretion of the trial court." *In re Will of Buck*, 350 N.C. 621, 624, 516 S.E.2d 858, 860 (1999).

49.     Defendants move for a new trial under Rules 59(a)(7)–(9), (ECF No. 271, at p. 2), which provide that a

> new trial may be granted to all or any of the parties and on all or part of the issues for any of the following causes or grounds:
> . . .
> (7) Insufficiency of the evidence to justify the verdict or that the verdict is contrary to law;
> (8) Error in law occurring at the trial and objected to by the party making the motion, or
> (9) Any other reason heretofore recognized as grounds for new trial.

50.     This Court has recently held:

> The power to grant a new trial is entrusted to the discretion of the trial court—discretion that must be used with *great care and exceeding reluctance*.  The verdict should be liberally and favorably construed with a view of sustaining it, if possible.  And the trial court should set aside a jury verdict only in those exceptional situations where the verdict is contrary to the evidence presented and will result in a miscarriage of justice.

*Shaw v. Gee*, 2018 NCBC LEXIS 109, at *15–16 (N.C. Super. Ct. Oct. 19, 2018) (quoting *In re Will of Buck*, 350 N.C. at 628, 516 S.E.2d at 862, and *Piazza v. Kirkbride*, 246 N.C. App. 576, 580, 785 S.E.2d 695, 698 (2016)) (citations and quotation marks omitted, emphasis in original).  Determination of a motion under Rule 59 is left to the Court's discretion, except for motions pursuant to Rule 59(a)(7) based on errors of law.  *Piazza*, 246 N.C. App. at 579, 785 S.E.2d at 698 ("While an

order for new trial pursuant to Rule 59 which satisfies the procedural requirements of the Rule may ordinarily be reversed on appeal only in the event of 'a manifest abuse of discretion,' when the trial court grants or denies a new trial 'due to some error of law,' then its decision is fully reviewable.").

51.     Defendants' JNOV Motion raises six arguments in support of granting judgment to Defendants, and alternatively seeks a new trial on the same grounds. The Court will address each argument in turn.

**1. The Court did not err in applying the statute of limitations for claims of breach of contract to Plaintiff's claims for declaratory judgment.**

52.     Plaintiff's ability to recover on his claims at trial depended upon whether his declaratory judgment claims were timely filed.  Plaintiff's standing to bring, and/or entitlement to receive any recovery resulting from, his remaining claims depended upon the Court making a declaration that he remained a member of the Chisum/Campagna LLCs, despite the Campagnas' claim that his membership interest in the Companies had been extinguished.  Prior to trial, the Court concluded that, because the Plaintiff a declaration of the parties' respective rights and obligations under the Chisum/Campagna LLCs' Operating Agreements, the three-year statute of limitations for breach of contract under G.S. § 1-52(1) should be applied to Plaintiff's claims for declaratory judgment.  The Court further found that issues of fact remained regarding when Plaintiff's claims for declaratory judgment accrued for purposes of applying the three-year statute of limitations.  (Or. and Op. Vacating Prior Orders for SJ ("Order Vacating SJ Orders"), ECF No. 236, at p. 13.)

53. At trial, the Court submitted to the jury the issue of whether Plaintiff filed "this lawsuit within three years of the date that he knew, or reasonably should have known, that the Campagnas no longer considered Dennis Chisum to be a member of Parkway and were excluding him from his membership rights in Parkway[,]" and submitted the same issue with regard to Judges Road. The jury answered "yes" to both issues, finding that Plaintiff timely filed his declaratory judgment claim within the breach of contract statute of limitations for those two LLCs.

54. In Defendants' JNOV Motion, Defendants request that "the Court [ ] set aside the verdict rendered as to all claims and grant judgment in their favor pursuant to Rule 50(b) on the grounds that the statute of limitations expired on the Plaintiff's declaratory judgment claims, relieving him of standing to maintain the derivative claims." (ECF No. 268, at p. 2.) Defendants contend that the Court erred as a matter of law in concluding that Plaintiff's claims for declaratory judgment accrued at the time Plaintiff first had notice, or reasonably should have been on notice, that the Campagnas breached the Operating Agreements by excluding him from his membership rights. (ECF No. 269, at pp. 2–14.) Defendants argue that the breaches accrued at the time the Campagnas first breached the Operating Agreements, regardless of whether Plaintiff knew or should have known of the breach. (*Id.*) Defendants further contend that the evidence showed that the Campagnas first breached the Operating Agreements when they "assumed total control and ownership over Judges Road and Parkway in August of 2012, when [Plaintiff] did not meet the

deadline set for his capital contribution to Judges Road." (*Id*. at p. 13.) Defendants make an identical argument in support of their New Trial Motion. (ECF No. 271, at pp. 2–14.)

55. As a preliminary matter, Defendants' JNOV Motion on this issue raises purely a question of whether the Court committed an error of law. While Defendants ask the Court "to enter judgment in favor of the Defendants on all claims or, in the alternative, grant a new trial pursuant to Rule 59(a) on the grounds that the jury's verdict is contrary to law and was the product of an error in law occurring at the trial," the Court does not believe it could enter judgment in Defendants' favor under these circumstances. Instead, the Court concludes Defendants' argument is more appropriately decided under Defendants' New Trial Motion pursuant to Rule 59(a)(7). *Piazza*, 246 N.C. App. at 579, 785 S.E.2d at 698 (concluding that although the defendant moved under Rules 50, 60, and 59(a), "[o]ur analysis of [Defendant]'s appeal leads to the conclusion that all his arguments surround the issue of whether or not the trial court's decisions were 'errors of law' which would entitle him to a new trial[,]" and deciding motions under Rule 59).

56. Accordingly, to the extent Defendants move for judgment notwithstanding the verdict under Rule 50(b) seeking reversal of the jury's verdict on the grounds of the Court's error of law regarding accrual of the claim for declaratory judgment, the motion should be DENIED.

57. In response to Defendants' contention that the Court erred in concluding that Plaintiff's claims for declaratory judgment accrued when Plaintiff knew or

should have known that the Campagnas were excluding him from his rights in the Chisum/Campagna LLCs, Plaintiff raises several arguments, only one of which need be addressed here: that the Court correctly determined that accrual of the declaratory judgment claim required notice to Plaintiff of the breach of the Operating Agreements, and the evidence viewed in the light most favorable to Plaintiff supports the jury's conclusion that Plaintiff timely filed his claims. (ECF No. 278, at pp. 1–10.)

58. The courts of this State have consistently held that a claim for breach of contract accrues when the plaintiff has notice that the agreement at issue has been breached. *E.g., N.C. Farm Bureau Mut. Ins. Co. v. Hull*, 370 N.C. 486, 809 S.E.2d 565 (2018) (reversing and remanding the Court of Appeals in *N.C. Farm Bureau Mut. Ins. Co. v. Hull*, 251 N.C. App. 429, 437, 795 S.E.2d 420, 437 (2016), for the reasons stated in the dissenting opinion, which noted that the proper statute of limitations for the declaratory judgment claim in that case was the three-year breach of contract statute of limitations, and stated in pertinent part: "in breach of contract actions, [t]he claim accrues at the time of notice of the breach"); *Ludlum v. State*, 227 N.C. App. 92, 94, 742 S.E.2d 580, 582 (2013) ("The claim [for breach of contract] accrues at the time of notice of the breach." (quotation marks omitted)); *Henlajon, Inc. v. Branch Hwys., Inc.,* 149 N.C. App. 329, 335, 560 S.E.2d 598, 603 (2002) ("The statute of limitations for a breach of contract action is three years. The claim accrues at the time of notice of the breach." (citing G.S. § 1-52(1) and *Abram v. Charter Med. Corp.,* 100 N.C. App. 718, 398 S.E.2d 331 (1990)). *Accord, Jones v. Jones*, 240 N.C.

App. 88, 772 S.E.2d 13, 2015 N.C. App. LEXIS 191, at *5 (2015) (unpublished); *Foot Locker, Inc. v. Best*, 230 N.C. App. 143, 752 S.E.2d 260, 2013 N.C. App. LEXIS 1042, at *5 (2013) (unpublished); *Biltmore Ave. Condo. Ass'n v. Hanover Am. Ins. Co.*, 2015 U.S. Dist. LEXIS 175773, at *5 (W.D.N.C. Sept. 3, 2015); *Zagaroli v. Neill*, 2018 NCBC LEXIS 25, at *36 (N.C. Super. Ct. Mar. 28, 2018).

59.     In *Abram v. Charter Med. Corp.,* the Court of Appeals explained that an action for breach of contract accrues once the injured party has notice of the breach:

> The controlling case is *Parsons v. Gunter*, 266 N.C. 731, 147 S.E.2d 162 (1966). In that case plaintiff Parsons and defendant Gunter agreed in April 1959 that 'they would work jointly to develop a machine known as a "cotton card drive".' *Id.* at 731, 147 S.E.2d at 163. The parties agreed that they would each 'receive one-half of the profits from sales of the machines.' *Id.* Thereafter, defendant sold some of the machines. In May 1960, plaintiff demanded an accounting of the proceeds defendant received; defendant told plaintiff that there was '"no room for [plaintiff] in the sale of [the] card drives."' *Id.* at 733, 147 S.E.2d at 164. Our Supreme Court held that in May 1960 Gunter had disclaimed his obligation to pay part of the proceeds to plaintiff and that '[t]his disavowal started the statute of limitations to run.' *Id.* Therefore, Parsons' right to maintain the action was barred since more than three years elapsed *since the date plaintiff was put on notice of Gunter's breach and the institution of the cause of action*. *Id.*

100 N.C. App. at 721, 398 S.E.2d at 333 (emphasis added).

60.     Recently the Supreme Court of North Carolina reiterated the simple principle that a claim for breach of contract accrues and the statute of limitations starts running when a party has notice that he has been injured by a breach.

> We have long recognized that a party must initiate an action within a certain statutorily prescribed period after discovering its injury to avoid dismissal of a claim.

. . .

Here plaintiff's complaint reveals that it had notice of its injury as early as 20 November 1999, when defendants failed to provide the first monthly report, and certainly by 20 October 2000, when defendants failed to pay the first $500 minimum royalty payment. *See Pembee Mfg. Corp. v. Cape Fear Constr. Co.*, 313 N.C. 488, 493, 329 S.E.2d 350, 354 (1985) (concluding that the statutes of limitations at issue in that case began to run 'as soon as the injury [became] apparent to the claimant or should reasonably [have] become apparent').

*Christenbury Eye Ctr., P.A. v. Medflow, Inc.*, 370 N.C. 1, 5–6, 802 S.E.2d 888, 891–92 (2017).

61. Despite this authority, Defendants contend that the Court erred in determining that Plaintiff's claims for declaratory judgment accrued upon Plaintiff's notice that Campagnas had breached the Operating Agreements. Defendants argue that a breach of contract claim accrues at the instant a party breaches the agreement, whether or not the other party to the agreement has notice of the breach. Effectively, Defendants argue that a party need not know that a contract has been breached for the claim to accrue.

62. In support of their argument, Defendants cite various decisions from North Carolina appellate courts holding that a cause of action for breach of contract accrues at the time of breach. (*See* ECF No. 271, at pp. 4–6.) However, as this Court has previously held, that statement of law is not inconsistent with the notion that a party must have notice that their rights have been violated under a contract in order for a claim for breach to accrue. In *Flanders/Precisionaire Corp. v. Bank of N.Y. Mellon Trust Co.*, 2015 NCBC LEXIS 36 (N.C. Super. Ct., Apr. 7, 2015), Chief Business Court Judge Bledsoe held:

'The statute [of limitations] [on a breach of contract claim] begins to run on the date the promise is broken.' *PharmaResearch Corp. v. Mash*, 163 N.C. App. 419, 424, 594 S.E.2d 148, 152 (2004).

. . .

Although [G.S.] §1-52(1) does not expressly contain a discovery clause, *see Brantley v. Dunstan*, 10 N.C. App. 706, 708-09, 179 S.E.2d 878, 880 (1971), our courts have also recognized that a breach of contract claim accrues at the time of notice of the breach.

2015 NCBC LEXIS 36, at *16–17 (citations removed).

63. Similarly, in *WNC Holdings, LLC v. Alliance Bank & Trust Co.*, 2012 NCBC LEXIS 53 (N.C. Super. Ct., Oct. 2, 2012), the Court held:

In a breach of contract action, North Carolina courts have consistently held that the statute begins to run when the breach occurs. While Tanner relies on language from our Court of Appeals that the claim 'accrues at the time of notice of the breach,' in context, this language merely reapplies the well-settled rule above. *Henlajon, Inc. v. Branch Highways, Inc.*, 149 N.C. App. 329, 335, 560 S.E.2d 598, 603 (2002). In *Henlajon,* the defendant sent a letter denying the existence of a contract and refusing to perform, which the Court held constituted the breach. *Id.* Therefore, *the notice was the breach which triggered the three-year statute of limitations*.

2012 NCBC LEXIS 53, at*41–42 (emphasis added).

64. Defendants contend that the first breach of the Judges Road and Parkway Operating Agreements occurred, and Plaintiff's breach of contract claims (and, by extension, Plaintiff's declaratory judgment claims) accrued, in August 2012, when the Campagnas first believed that Plaintiff's membership interests in those LLCs had been eliminated, and they thereafter "assumed total control and ownership over Judges Road and Parkway." (ECF No. 271, at p. 13.) However, Defendants fail

to explain how the Campagnas' belief that Plaintiff had been eliminated from membership was, by itself, a breach of the Operating Agreements. Defendants also do not explain how Plaintiff could have had notice of their belief, nor their assumption of control over Judges Road and Parkway. The Campagnas did not send any written notice to Plaintiff following the July 2, 2012 Judges Road meeting informing Plaintiff that they considered his memberships in Judges Road and Parkway extinguished. The Campagnas never amended the Judges Road and Parkway Operating Agreements to eliminate Plaintiff's interests in either LLC. In fact, Judges Road and Parkway sent Plaintiff K-1 forms in the fall of 2013 that showed Plaintiff still maintained an interest in those LLCs as of the end of 2012. Judges Road and Parkway first sent Plaintiff K-1 forms showing that Plaintiff's membership interest had been reduced to zero in mid-to-late 2014. In this case, as stated in *Henlajon* and in *WNC Holdings, LLC*, "the notice was the breach which triggered the three-year statute of limitations." *WNC Holdings, LLC*, 2012 NCBC LEXIS 53, at \*42.

65. The Court correctly applied the law in North Carolina regarding accrual of breach of contract claims and the associated statute of limitations for purposes of determining whether Plaintiff's declaratory judgment claim was timely filed. Defendants' New Trial Motion on the grounds that the Court erred in applying the law regarding accrual of the claim for declaratory judgment should be DENIED.

2. **There was evidence that the Campagnas breached fiduciary duties and engaged in constructive fraud to support the verdicts on those claims.**

66.     Defendants next challenge the jury's verdicts in favor of Plaintiff on the claims for breach of fiduciary duty and constructive fraud.  The jury found Richard breached fiduciary duties and engaged in constructive fraud against Parkway and Judges Road.  The jury awarded against Richard $128,757.00 as damages to Parkway and $1.00 against Richard as damages to Judges Road.  The jury found Rocco did not breach fiduciary duties against Parkway or Judges Road, but did engage in constructive fraud against Parkway and Judges Road.  The jury awarded against Rocco $128,757.00 as damages to Parkway and $1.00 against Rocco as damages to Judges Road.  Defendants contend that the Court should set aside the jury's verdicts on Plaintiff's derivative claims for breach of fiduciary duty and for constructive fraud, and enter judgment in favor of Defendants, because Plaintiff "presented no evidence of breach or damages."  (ECF No. 269, at pp. 15–17.)  Defendants contend that Plaintiff did not present expert testimony regarding breaches of fiduciary duty, and that "[n]o witness testified that any particular transaction or type of transaction was a breach of duty to the LLCs." (*Id.* at p. 16.)  Defendants also note that both Hardison, the accountant for the Chisum/Campagna LLCs, and MacDonald, testified that they did not consider the Campagnas' actions to be improper.  (*Id.*)

67.     The elements of a claim for breach of fiduciary duty are (1) the existence of a fiduciary relationship; (2) the failure, by the fiduciary, to act in good faith and with due regard to the plaintiff's interests.  *E.g., Toomer v. Branch Banking & Trust Co.,* 171, N.C. App. 58, 70, 614 S.E.2d 328, 337 (2005); *White v. Consol. Planning, Inc.,* 166 N.C. App. 283, 293, 603 S.E.2d 147, 155 (2004); *Vail v. Vail,* 233 N.C. 109,

114, 63 S.E.2d 202, 206 (1951); *Evans v. Neill*, 2011 N.C. App. LEXIS 2365, at \*4–5, 217 N.C. App. 195, 719 S.E.2d 255 (2011) (unpublished).

68. "To establish constructive fraud, a plaintiff must show that defendant (1) owes plaintiff a fiduciary duty; (2) breached this fiduciary duty; and (3) sought to benefit himself in the transaction." *Crumley & Assocs., P.C. v. Charles Peed & Assocs., P.A.*, 219 N.C. App. 615, 620, 730 S.E.2d 763, 767 (2012).

69. First, with regard to Defendants' contention that Plaintiff did not present expert testimony in support of his claims that Richard and Rocco engaged in conduct that constituted breaches of fiduciary duty, Defendants have not pointed the Court to, nor is the Court aware of, any authority to support the notion that expert testimony is necessary to prove claims for breach of fiduciary duty or constructive fraud. Instead, lay testimony would often be sufficient to establish a breach of fiduciary duty. *See Schaffner v. Cumberland County Hospital System, Inc.*, 77 N.C. App. 689, 692, 336 S.E.2d 116, 118 (1985) ("When, as here, the facts can be evaluated based on common expertise and knowledge, expert testimony is not required.").

70. At trial, Plaintiff presented evidence that Richard and/or Rocco, *inter alia*: made undocumented loans to themselves from Parkway and Judges Road which were used for personal, and not company, purposes, and never paid the loans back; violated the Operating Agreements by failing to send Plaintiff required reports and documents, including required K-1 forms and required notices of member meetings; and directed the sale of all or substantially all of the assets of Parkway to the Camp Group, and sold all or substantially all of the assets of Judges Road, without

informing, or obtaining consent from, Plaintiff in violation of G.S. § 57D-3-03 ("The approval of all members is required to do any of the following: . . . Other than in the ordinary course of business, transfer in one transaction or a series of related transactions all or substantially all of the assets of the LLC prior to the dissolution of the LLC.").[4] All of this evidence was proper as proof of the essential elements of breach of fiduciary duty and constructive fraud.

71. Finally, with regard to Defendants' assertion that Hardison and MacDonald testified that the Campagnas did nothing improper, the Court notes that neither Hardison nor MacDonald were presented as experts on the issue of the standard of care; that Hardison's testimony was elicited entirely under the assumption that the Campagnas had properly eliminated Chisum as a member in the Chisum/Campagna LLCs, and not that Chisum's membership interest was being wrongfully ignored or excluded; and, finally, that the jury likely gave little weight to MacDonald's testimony on the issue of the wrongfulness of the Campagnas' actions as LLC managers, given his admittedly incorrect advice to the Campagnas as to whether the Operating Agreement permitted them to extinguish Plaintiff's membership interests.

72. When viewed in the light most favorable to Plaintiff, and resolving all conflicts in the evidence in favor of the Plaintiff, as the Court must on both a motion

---

[4] Defendants appear to base their arguments that the Campagnas' conduct was not improper on Defendants' incorrect position in this lawsuit that they had properly extinguished Plaintiff's membership interests in the Chisum/Campagna LLCs. The evidence, however, must be viewed in light of the fact that Plaintiff remained a member of Parkway and Judges Road during the period when the Campagnas were engaged in the conduct.

for directed verdict and on a motion for judgment notwithstanding the verdict, *Williams v. O'Charley's, Inc.*, 221 N.C. App. 390, 392, 728 S.E.2d 19, 21 (2012), the Court is satisfied that Plaintiff presented sufficient evidence of breaches of fiduciary duty by the Campagnas to send those claims to the jury, and that the jury's findings on those claims are supported by the evidence. Defendants' motions for judgment notwithstanding the verdict and new trial based on inadequacy of the evidence should be DENIED.

**3. Defendants waived the argument that Plaintiff was required to prove actual damages to sustain the claims for breach of fiduciary duty and constructive fraud brought by Judges Road.**

73. Defendants also contend that "[b]ecause the jury found no actual damages suffered by Judges Road, there can be no breach of fiduciary duty or constructive fraud, as a matter of law[.]" (ECF No. 269, at p. 14.) However, Defendants waived this argument because (1) they failed to argue that claims for breach of fiduciary duty and constructive fraud require a finding of actual damages and cannot be based on nominal damages, and (2) Defendants invited the error by requesting that the Court instruct the jury that the claims could be supported without evidence of actual damages, and that a breach of fiduciary duty or constructive fraud could be supported by nominal damages.

74. On the claims for breach of fiduciary duty and constructive fraud on behalf of Judges Road, the jury awarded nominal damages of $1.00 against each of the Defendants. Defendants now contend that proof of actual damages is required in order to sustain claims for breach of fiduciary duty and constructive fraud. After

carefully reviewing the law on this issue, the Court is skeptical that Defendants are correct. Nevertheless, it need not decide the issue because Defendants waived the issue and did not properly preserve the question for post-trial review.

75. In their directed verdict motions, Defendants never argued that breach of fiduciary duty and constructive fraud require, as an essential element of proving the claim, actual damages. Instead, Defendants argued that the claims required a showing of "injury" or "damages" to prove the claims. Defendants did not argue that nominal damages could not support claims for breach of fiduciary duty and constructive fraud.[5] This is significant, since the general term "damages" would include both "actual damages" and "nominal damages," which are starkly different. "The word 'damages' is defined as compensation which the law awards for an injury[;] 'injury' meaning a wrongful act which causes loss or harm to another.'" *Heron Bay Acquisition, LLC v. United Metal Finishing, Inc.*, 245 N.C. App. 378, 384, 781 S.E.2d 889, 894 (2016). "[A]ctual damage [ ] mean[s] some actual loss, hurt or harm resulting from the illegal invasion of a legal right," *Hawkins v. Hawkins*, 101 N.C. App. 529, 532, 400 S.E.2d 472, 474–75 (1991), while "nominal damages is a small, trivial sum awarded in recognition of a technical injury which has caused no substantial damage." *Wolfe v. Montgomery Ward & Co.*, 211 N.C. 295, 296, 189 S.E. 772, 773 (1937). Both actual and nominal damages are species of "damages."

---

[5] The Court notes that Defendant's failure to make such an argument is consistent with the law as stated in the North Carolina Pattern Jury Instructions (Civil), (Version 14.4.1), which state that a claim for breach of fiduciary duty requires proof of "damage" to the plaintiff (807.50).

76.    It was imperative for Defendants to make the specific argument that *actual* damages were a required element of breach of fiduciary duty and constructive fraud, and that nominal damages would not support the claims.  They failed to do so.  As the Honorable Adam M. Conrad recently held:

> When, as here, a party states 'very specific grounds for its directed verdict motion[,]' it is reasonable 'to disregard unasserted, but potentially viable arguments in favor of a directed verdict.' *Plasma Ctrs. of Am.*, 222 N.C. App. at 88, 731 S.E.2d at 841; *see also Maitra v. Quarter Mile Muscle, Inc.*, 801 S.E.2d 181, 2017 N.C. App. LEXIS 479, at *8–10 (N.C. Ct. App. 2017)(unpublished) (affirming denial of JNOV when defendant failed to preserve grounds through directed-verdict motion or appropriate challenges to jury instructions); *Geoscience Grp., Inc. v. Waters Constr. Co.*, 234 N.C. App. 680, 691, 759 S.E.2d 696, 703 (2014) (same); *Estate of Smith v. Underwood*, 127 N.C. App. 1, 16, 487 S.E.2d 807, 817 (1997) (same); *Lassiter v. English*, 126 N.C. App. 489, 493, 485 S.E.2d 840, 843 (1997)(reversing grant of JNOV when movant challenged negligence claim but not specifically proximate causation), *overruled on other grounds by In re Will of Buck*, 350 N.C. 621, 629, 516 S.E.2d 858, 863 (1999).

*Shaw*, 2018 NCBC LEXIS 109, at *14; *see Chalk v. Braakman*, 2019 N.C. App. LEXIS 263, at *3 (March 19, 2019) ("Under Rule 50(a), a party may move for directed verdict at the close of evidence offered by an opponent or at the close of all the evidence provided the motion 'state[s] the specific grounds therefor.'  [Rule] 50(a) (2017). Our Courts have long held 'this provision is mandatory'"; *citing Feibus & Co. v. Construction Co.*, 301 N.C. 294, 298, 271 S.E.2d 385, 388 (1980)).

77.    In addition, Defendants invited the error to which they now object by submitting proposed jury instructions to the Court that did not include a request that

the jury be instructed that actual damages were required to find liability on the claims for breach of fiduciary duty and constructive fraud. To the contrary, Defendants' proposed instructions on damages for those claims as to Judges Road contained the following:

> If you have answered . . . "Yes" in favor of Judges Road [on either or both of the claims for [breach of fiduciary duty or constructive fraud] *then the plaintiff is entitled to recover nominal damages even without proof of actual damages.* Nominal damages consist of some trivial amount such as one dollar in recognition of a technical injury to the plaintiff.
>
> The plaintiff may also be entitled to recover actual damages. On this issue the burden of proof is on the plaintiff. This means that the plaintiff must prove, by the greater weight of the evidence, the amount of actual damages caused by the breach of fiduciary duty or constructive fraud of the defendant.

(ECF No. 248, at pp. 37 and 41; emphasis added.) The Court adopted this language and instructed the jury consistent with Defendants' proposed instructions.[6] During the charge conference, Defendants did not object to the proposed instruction, but rather asked that the Court adopt Defendants' proposed jury instructions.

78. Invited error has been defined as:

> [A] legal error that is not a cause for complaint because the error occurred through the fault of the party now complaining. The evidentiary scholars have provided similar definitions; e.g., 'the party who induces an error can't take advantage of it on appeal', or more colloquially, 'you can't complain about a result you caused.'

---

[6] Plaintiff submitted the same language in its proposed jury instruction regarding damages for breach of fiduciary duty and constructive fraud.

*Boykin v. Wilson Med. Ctr.*, 201 N.C. App. 559, 563, 686 S.E.2d 913, 916 (2009) (citations omitted). *See also, SPX Corp. v. Liberty Mut. Ins. Co.*, 210 N.C. App. 562, 575, 709 S.E.2d 441, 450 (2011) (quoting *Boykin*, and holding that "Liberty, having presented the trial court with evidence about what was said and done at the settlement conference, may not now be heard to complain that the trial court considered that very evidence. This argument is overruled").

79.     To the extent Defendants have moved for judgment notwithstanding the verdict, or for a new trial, on all of Plaintiff's claims for the breach of fiduciary duty and constructive fraud on behalf of Judges Road because Plaintiff was required to prove actual damages in support of those claims and failed to establish actual damages, those motions should be DENIED.

**4. The Jury's Verdicts Against Rocco on the Claims for Breach of Fiduciary Duty and Constructive Fraud Are Not Inconsistent.**

80.     Defendants move for JNOV or, alternatively, a new trial on the grounds that the jury's verdict against Rocco finding him liable for constructive fraud against Judges Road is inconsistent with the jury's verdict finding that Rocco did not breach his fiduciary duties to Judges Road. (ECF No. 268, at pp. 2–3; ECF No. 270, at pp. 2–3.) Defendants contend Rocco's duties to Judges Road arose solely from his position as a manager of Judges Road, and that

> [t]he verdict that [Rocco] did not breach his fiduciary duties to the injury of Judges Road is incompatible with the verdict that he is liable for constructive fraud. . . . If he did not breach those fiduciary duties, then he could not be liable for constructive fraud as a matter of law.

(ECF No. 271, at p. 19.)

81.     In response, Plaintiff argues that the jury was instructed that it could consider a much longer time period of conduct that could constitute constructive fraud under the statute of limitations applicable to that claim (10 years) than they could consider in determining whether Rocco breached his fiduciary duties (3 years), and could have concluded Rocco committed breaches of his duties to Judges Road that occurred outside of the statute of limitations period for a claim for breach of fiduciary duty. (ECF No. 283, at p. 15.) In addition, Plaintiff noted that Defendants cited no case authority in support of the contention that a finding in favor of Plaintiff on a constructive fraud claim is inconsistent with a finding against Plaintiff on a breach of fiduciary duty claim. (*Id.*)[7]

82.     Although Defendants make the argument regarding the inconsistency of the verdict in both Defendants' JNOV Motion and Defendants' New Trial Motion, "[w]here the jury's answers to the issues are allegedly contradictory, a motion for a new trial under Rule 59 is the appropriate motion." *Boone Ford, Inc. v. IME Scheduler, Inc.,* 2018 N.C. App. LEXIS 1080, at \*8 (2018) (*quoting Walker v. Walker*, 143 N.C. App. 414, 421, 546 S.E.2d 625, 630 (2001)). Accordingly, the Court considers this issue only with regard to Defendants' New Trial Motion, and to the extent Defendants' JNOV Motion seeks relief based on the allegedly inconsistent verdicts, the motion should be DENIED.

---

[7] Plaintiff further contends that Defendants did not address this issue in their proposed jury instructions, citing to page 39 of Defendants' Proposed Jury Instructions, (ECF No. 248). (ECF No. 283, at pp.15–16.) Plaintiff is incorrect. Defendants' proposed instruction regarding the constructive fraud claims expressly states that "[y]ou will answer this Issue only if you answered Issue 20 [breach of fiduciary duty] above "Yes" in favor of the Plaintiff."

83. An argument that a jury has reached inconsistent verdicts is committed to the trial court's discretion. *Piazza*, 246 N.C. App. at 579, 785 S.E.2d at 698.

> When a jury returns a verdict answering several issues, and an irreconcilable repugnance among the issues makes them 'so contradictory as to invalidate the judgment, the practice of the Court is to grant a new trial . . . .' *Palmer v. Jennette*, 227 N.C. 377, 379, 42 S.E.2d 345, 347 (1947). However, '[i]t is well settled that a verdict should be liberally and favorably construed with a view of sustaining it, if possible . . .' *Strum v. Greenville Timberline, LLC*, 186 N.C. App. 662, 665, 652 S.E.2d 307, 309 (2007) (quoting *Guy v. Gould*, 202 N.C. 727, 729, 164 S.E. 120, 121 (1932)). '"The trial judge has the discretionary power to set aside a verdict when, in his opinion, it would work injustice to let it stand; and, if no question of law or legal inference is involved in the motion, his action in so doing is not subject to review on appeal in the absence of a clear abuse of discretion."' *Seaman v. McQueen*, 51 N.C. App. 500, 505, 277 S.E.2d 118, 121 (1981) (quoting *Selph v. Selph*, 267 N.C. 635, 637, 148 S.E.2d 574, 575-76 (1996)).

*Id*. at 579–80, 785 S.E.2d at 698.

84. The Court has thoroughly considered the issue and, in its discretion, concludes that the jury's verdicts on the claims for breach of fiduciary duty and constructive fraud were not inconsistent in the circumstances of this trial.

85. In addition, the Court does not find the verdicts to be necessarily inconsistent. The jury was permitted to consider Rocco's conduct for the 10 years preceding January 6, 2017, in deciding whether he had committed constructive fraud, but for only 3 years preceding January 6, 2017, for the claim of breach of fiduciary duty. Plaintiff presented detailed, voluminous evidence regarding Judges Road financial transactions from 2010 through 2017. The jury could have concluded that

Rocco engaged in acts in breach of the trust and confidence he owed Judges Road for which he should be held liable that occurred prior to, but not after, January 6, 2014.

86.     Therefore, construing the verdict "liberally and favorably [ ] with a view of sustaining it, if possible", *Piazza*, 246 N.C. App. at 579, 785 S.E.2d at 698, the Court concludes that Defendants' motion for new trial on the jury's verdict finding Rocco liable for constructive fraud should be DENIED.

**5.     Defendants did not meet their evidentiary burden of proving the Campagnas were open, fair, and honest to the Chisum/Campagna LLCs and Plaintiff for the purpose of rebutting the presumption of fraud.**

87.     Defendants next argue that they are entitled to judgment notwithstanding the verdict or a new trial on the claims for constructive fraud because the evidence at trial showed that the Campagnas "were open, fair, and honest to the [Chisum/Campagna] LLCs and their members." (ECF No. 268, p. 4; ECF No. 270, p. 3.)

88.     The open, fair, and honest defense is merely a burden-shifting device applied to claims for constructive fraud; it is not an affirmative defense that defeats the claim. *Estate of Smith by & Through Smith v. Underwood,* 127 N.C. App. 1, 9, 487 S.E.2d 807, 812 (1997).

> When a fiduciary relationship exists between parties to a transaction, equity raises a presumption of fraud when the superior party obtains a possible benefit. This presumption arises not so much because [the fiduciary] has committed a fraud, but [because] he may have done so. The superior party may rebut the presumption by showing, for example, that the confidence reposed in him was not abused, but that the other party acted on independent advice. Once rebutted, the presumption evaporates, and the accusing

party must shoulder the burden of producing actual evidence of fraud (citations omitted) (emphasis added).

*Id.* at 9–10, 487 S.E.2d at 812–13 (quoting *Watts v. Cumberland County Hospital System, Inc.*, 317 N.C. 110, 116, 343 S.E.2d 879, 884 (1986)). Put succinctly, Plaintiff's evidence establishing a *prima facie* case for breach of fiduciary duty creates a presumption of fraud, which shifts the evidentiary burden to Defendants to put forward evidence that would rebut that presumption.

89. North Carolina's appellate courts have recognized at least two means by which a party may establish that it was open, fair, and honest. A party may present evidence that they did not abuse the confidence placed in them by the other party, even in the presence of actions that amounted to a breach of their owed fiduciary duty, by showing the fiduciary provided periodic reporting, fairly negotiated transactions, and gained no personal advantage from the transactions. *See Underwood*, 127 N.C. App. at 10, 487 S.E.2d at 813. The fiduciary may also establish that the party to whom they owed a duty obtained their own independent advice regarding the matter. *Watts*, 317 N.C. at 116, 343 S.E.2d at 884 (holding that evidence that the plaintiff received multiple opinions from other physicians rebutted constructive fraud claim against defendant); *Sullivan v. Mebane Packaging Group, Inc.*, 158 N.C. App. 19, 33, 581 S.E.2d 452, 462 (2003) (holding that evidence that plaintiff shareholder obtained outside advice during negotiations with defendant corporate officers and directors for the sale of his shares rebutted presumption of fraud).

90.     Defendants did not argue, nor present evidence, that the Campagnas did not abuse their positions of confidence because they provided periodic reporting to Plaintiff, fairly negotiated transactions, and gained no personal advantage from the transactions.  Defendants attempted to rely upon the independent advice prong of the open, honest, and fair defense.

91.     Defendants argued at the directed verdict stage that they were entitled to judgment on the claims for constructive fraud because they had presented evidence that Plaintiff had obtained independent advice from MacDonald.  However, in their briefs in support of Defendants' JNOV Motion, Defendants do not argue that their actions were open, fair, and honest because Plaintiff obtained independent advice.[8] Rather, Defendants only argue that the Campagnas did not abuse their positions because the Campagnas relied on the advice of MacDonald and Hardison in taking the actions and engaging in the transactions at issue.  (ECF No. 269, at pp. 20–21; ECF No. 295, at p. 11.)

92.     The Court finds that Defendants waived the argument in support of Defendants' JNOV Motion that Plaintiff obtained independent advice and, therefore, the Campagnas were entitled to an open, honest, and fair defense jury instruction, by failing to raise it for consideration of their directed verdict motion, and accordingly, the Court does not consider that argument.  To the extent Defendants have moved for judgment notwithstanding the verdict on Plaintiff's claims for constructive fraud

---

[8] Any such argument would be futile for, the Court notes, any advice Chisum received from MacDonald, who served as both his personal attorney and the Chisum/Campagna LLCs' attorney, was not "independent" advice of the type contemplated by the case law.

on the grounds that the evidence showed Chisum obtained independent advice, Defendants' JNOV Motion should be DENIED.

93. Defendants move for a new trial on the grounds that the "evidence showed that [the Campagnas] were open, honest, and fair to the LLCs and their members" because they sought advice from MacDonald and Hardison, but the Court did not instruct the jury regarding the open, fair, and honest defense. (ECF No. 270, at p. 3; ECF No. 271, at pp. 19–21.) The pertinent issue in this case is not whether the Campagnas were open, honest, and fair to the LLCs as abstract entities, but whether the Campagnas were open, honest, and fair to Plaintiff as a member of the LLCs. Defendants seem to concede this point, framing the issue in their new trial motion as whether the Campagnas "were open, honest, and fair to the LLCs *and their members.*" (ECF No. 271, at p. 20 (emphasis added).)

94. At the time the Campagnas took the actions underlying the constructive fraud claims, they incorrectly believed that Chisum's membership interests in Parkway and Judges Road had been extinguished. It has now been established, and this Court has declared, that Chisum maintained his membership interests during the period at issue. The evidence at the trial showed that MacDonald and Hardison provided advice to the Campagnas on actions taken by and on behalf of Parkway and Judges Road under the assumption that Richard and Rocco were the only members of those LLCs. In fact, MacDonald admittedly provided the Campagnas with incorrect advice regarding their right to eliminate Chisum as a member. Hardison provided advice regarding tax documents, entries to the general ledger for certain

transactions, and distributions to members of Parkway and Judges Road, based on the Campagnas' erroneous representations that Chisum's membership had been extinguished. This evidence does not meet the Defendants' burden of showing that they were open, honest, and fair to Plaintiff as the only non-Campagna member of the Chisum/Campagna LLCs.

95. Finally, the Court notes that even if Defendants had presented evidence establishing that they were open, honest, and fair to Plaintiff as a member of the LLCs, this would only serve to rebut the presumption of fraud and shift the burden of proof of actual fraud back to Plaintiff. Plaintiff's evidence in this area was more than sufficient to allow the jury to determine that the Campagnas breached their fiduciary duties to Parkway and Judges Road, from which the jury could find the Campagnas liable for constructive fraud.

96. Therefore, the Court concludes, in its discretion, that Defendants' New Trial Motion on the constructive fraud claims, based on the Court's failure to instruct the jury on the open, honest, and fair defense, should be DENIED.

**6. The jury's punitive damages awards to Judges Road and Parkway were supported by the underlying claims for liability.**

97. Defendants next move for judgment notwithstanding the verdict or for a new trial as to the jury's awards of punitive damages against Parkway or Judges Road on the grounds that, to the extent the Court reverses or vacates the jury's verdict on the underlying liability for the claims for breach of fiduciary duty or constructive fraud, it must also vacate the awards of punitive damages based on those claims.

98.     The Court has already determined that the verdicts returned on liability on the claims for breach of fiduciary duty and constructive fraud should not be reversed or vacated.  Accordingly, to the extent Defendants move for judgment notwithstanding the verdict or a new trial on the jury's awards of punitive damages for breach of fiduciary duty or constructive fraud, those motions should be DENIED.

**7. The jury's award of nominal damages to Judges Road supports its award of punitive damages.**

99.     Defendants also move for judgment notwithstanding the verdict, but not for a new trial, on the jury's award of punitive damages to Judges Road, arguing that the jury's award of only nominal damages, and not actual damages, cannot support an award of punitive damages to Judges Road as a matter of law.  (ECF No. 268, at p. 3; ECF No. 269, at p. 23.)  Defendants cite no authority in support of this proposition.

100.    Defendants are simply incorrect.  The Court of Appeals has held that:

> [i]t is well established that merely '[n]ominal damages may support a substantial award of punitive damages.'  [O]nce a cause of action is established, plaintiff is entitled to recover, as a matter of law, nominal damages, which in turn support an award of punitive damages.  Nominal damages need only be recoverable to support a punitive damages award, and a finding of nominal damages by the jury is not required where plaintiff has sufficiently proven the elements of her cause of action.

*Mace v. Pyatt*, 203 N.C. App. 245, 255, 691 S.E.2d 81, 89–90 (2010) (internal citations omitted) (citing *Zubaidi v. Earl L. Pickett Enters., Inc.*, 164 N.C. App. 107, 118, 595 S.E.2d 190, 196 (2004); *Hawkins*, 331 N.C. at 745, 417 S.E.2d at 449).  *See also, e.g.*, *Mehovic v. Mehovic*, 133 N.C. App. 131, 135–36, 514 S.E.2d 730, 733 (1999) (stating

that "nominal damages must be *recoverable* in order to justify an award of punitive damages, but that there is no requirement that nominal damages '*actually be recovered*[ ]'" (emphasis in original, citation omitted)).

> As we previously held, plaintiff produced sufficient evidence to submit the issue of punitive damages to the jury, and since plaintiff received $ 1.00 in compensatory damages, the test for awarding punitive damages under *Hawkins* was met. It was within the jury's discretion to determine the amount of punitive damages to award the plaintiff, and the fact that this amount greatly exceeded the amount awarded in compensatory damages does not, by itself, warrant a new trial.

*Horner v. Byrnett*, 132 N.C. App. 323, 329, 511 S.E.2d 342, 346 (1999).

101.    Finally, in *Collier v. Bryant*, 216 N.C. App. 419, 719 S.E.2d 70 (2011), the Court held:

> [p]unitive damages are available, not as an individual cause of action, but as incidental damages to a cause of action. In North Carolina, punitive damages have been awarded on the basis of the public policy reason to punish intentional wrongdoing, not on the basis of compensating a plaintiff. Therefore, punitive damages can be awarded if either actual or constructive fraud is shown. To justify an award of punitive damages, nominal damages must be recoverable, but there is no requirement that nominal damages actually be recovered.

216 N.C. App. at 434, 719 S.E.2d at 82 (citations omitted).

102.    The jury returned verdicts in favor of Judges Road and against Richard for breach of fiduciary duty and constructive fraud, and against Rocco for constructive fraud.  The award of nominal damages against Richard and Rocco supports the jury's awards of punitive damages to Judges Road.

103. For that reason, Defendants' motion for judgment notwithstanding the verdict as to the punitive damages awards awarded to Judges Road should be DENIED.

## B. Plaintiff's Motion and Plaintiff's Motion to Bar Punitives

104. Plaintiff also seeks post-trial relief. Plaintiff moves, pursuant to Rules 50 and 59, for judgment notwithstanding the verdict, or a new trial, as to the Court's dismissal of its claims regarding CCH. (ECF No. 277, at pp.1–2.) Plaintiff also moves the Court to alter or amend the Final Judgment to "include a direction to cancel the deeds that illegally transferred Parkway properties to The Camp Group, LLC," and "amend the judgment to bar the Campagnas from receiving distributions that include any of the punitive damages that they were ordered to pay to Parkway or Judges Road." (*Id.* at pp. 1–2.)

105. Plaintiff also filed a Motion to Bar Punitives (ECF No. 261). However, Plaintiff concedes that the arguments raised in support of the Motion to Bar Punitives are identical to the arguments raised herein regarding that issue, and the Court will consider the Motion to Bar Punitives as part of its determination of Plaintiff's Motion.

### 1. The Court properly applied the statute of limitations for breach of contract claims to Plaintiff's claims for declaratory judgment.

106. In support of its request for JNOV or a new trial on the declaratory judgment claim regarding CCH, Plaintiff raises several arguments including, *inter alia*: (i) that only laches, and not statutes of limitations, are properly applied to claims for declaratory judgment; (ii) that if statutes of limitations apply to claims for declaratory judgment, the proper statute of limitations to be applied to Plaintiffs'

claims is the ten-year statute of limitations for constructive fraud; (iii) that the statute of limitations never commenced running because the Campagnas never amended the Operating Agreements to reflect that Plaintiff lost his memberships interests; and (iv) that the Campagnas exercise of control over Judges Road and Parkway after July 2012 was a mere "anticipatory repudiation" of the Operating Agreements, which Plaintiff did not treat as a breach and did not trigger the statute of limitations. (ECF No. 278, at pp. 1–10.)

107. Plaintiff's arguments that laches, but not statutes of limitations, applies to claims for declaratory judgment actions, and that the appropriate statute of limitations to be applied in this case is the limitations period for constructive fraud claims, are simply rehashes of the arguments the Court thoroughly addressed in its Order Vacating SJ Orders. (ECF No. 236.) As the Court concluded in that order, North Carolina's appellate courts have long held that both statutes of limitations and laches may be applied to claims for declaratory judgment. (*Id*. at pp. 7–8.) In addition, in the Order Vacating SJ Orders, the Court determined that the statute of limitations governing claims for breach of contract was applicable to Plaintiff's claims for declaratory judgment because the substance of the claims was an attempt to vindicate rights granted to him under the Operating Agreements. (*Id*. at pp. 8–12.) Plaintiff has presented no new arguments or information in Plaintiff's Motion that changes the Court's conclusions on these issues.

108. Therefore, to the extent that Plaintiff's motion seeks relief on the grounds that laches, and not statute of limitations, should have been applied to the

declaratory judgment claim, that motion should be DENIED. Further, to the extent Plaintiff's motion seeks relief on the grounds that, if statute of limitations is applied to declaratory judgment claims, that the ten-year statute of limitations for constructive fraud and not the three-year statute of limitations for breach of contract should have been applied to the declaratory judgment action, that motion should be DENIED.

2. **The statute of limitations for breach of contract has been triggered for purposes of Plaintiff's declaratory judgment claim, and facts in this case do not support an anticipatory repudiation theory.**

109. Plaintiff argues that if the Court applies the statute of limitations for breach of contract to his declaratory judgment claim regarding CCH, the statute of limitations has not yet been triggered by an actual breach of the CCH operating agreement and Plaintiff's claim is timely. (ECF No. 278, at p. 7.) Plaintiff argues that the only event that could trigger the breach of contract statute of limitations would be the improper amendment of Schedule I of the CCH Operating Agreement to reflect the total elimination of Chisum's ownership interest in CCH. Plaintiff contends that all other actions, threats, statements, or omissions, by the Campagnas short of amending Schedule I "had the legal effect akin to someone on the street yelling that they owned your car – which is to say, no legal effect." (*Id.*)

110. Plaintiff also in this section attempts to re-characterize the Campagnas' actions toward his membership rights and interest in CCH as mere anticipatory repudiation. (ECF No. 278, at pp. 7–8.) The law on anticipatory repudiation does not fit Plaintiff's claims.

111. In *Profile Invs. No. 25, LLC v. Ammons East Corp.*, 207 N.C. App. 232, 700 S.E.2d 232 (2010), the North Carolina Court of Appeals stated the law on anticipatory repudiation as follows:

> Breach [of contract] may [ ] occur by repudiation. Repudiation is a positive statement by one party to the other party indicating that he will not or cannot substantially perform his contractual duties. When a party repudiates his obligations under the contract *before* the time for performance under the terms of the contract, the issue of anticipatory breach or breach by anticipatory repudiation arises.

207 N.C. App. at 236, 700 S.E.2d at 235 (quoting *Millis Constr. Co. v. Fairfield Sapphire Valley,* 86 N.C. App. 506, 510, 358 S.E.2d 566, 569 (1987) (citations and brackets omitted)).

112. Plaintiff does not point to any specific act that he claims constituted an anticipatory repudiation of his membership rights in CCH. Plaintiff does not claim that the Campagnas notified Plaintiff that they would not perform an obligation under the Operating Agreement before performance was due. Rather, the evidence adduced at trial shows that the Campagnas breached his rights under the CCH operating agreement during 2010 and that Plaintiff had notice of the breach no later than October 2011, when Plaintiff received his 2010 K-1 for CCH. The 2010 CCH K-1 form did not merely notify Plaintiff that the Campagnas intended not to perform their obligations under the CCH Operating Agreement; it notified Plaintiff that they already had breached the agreement by terminating Plaintiff's membership interest prior to the end of 2010. The K-1 indicated that the Campagnas had extinguished Plaintiff's membership interests as of December 31, 2010, and that the K-1 was the

final one he would receive. Plaintiff admitted he understood that the Campagnas were claiming that they had eliminated Plaintiff's ownership in CCH.

113. The evidence, viewed in the light most favorable to Defendants, shows that after receiving the 2010 K-1, Plaintiff conducted himself as if his membership in CCH had been extinguished. He did not contact the Campagnas to dispute that his membership had been eliminated. Although Plaintiff claimed that he knew the Campagnas could not eliminate his membership interests because of his failure to pay capital calls, he nevertheless represented to the IRS that his interest in CCH had been forfeited for failure to meet capital calls.

114. The anticipatory repudiation theory has no application to these facts. The Campagnas did not simply state an intention not to honor the Operating Agreement, they actually violated Plaintiff's rights under the Operating Agreement by improperly eliminating his membership rights. Therefore, Plaintiff's argument that the only event that could trigger the breach of contract statute of limitations would be amendment to Schedule I of the CCH Operating Agreement is without merit. Plaintiff did not file his original complaint until July 2016, long after he had notice of this breach, and well outside the applicable three-year statute of limitations.

115. Therefore, to the extent that Plaintiff's motion seeks judgment notwithstanding the verdict or a new trial on the declaratory judgment claim as it applies to CCH, on the grounds that the evidence showed the Campagnas engaged in a mere anticipatory repudiation of the CCH Operating Agreement that did not trigger the breach of contract statute of limitations, that motion should be DENIED.

**C. The Court will not alter or amend the judgments to cancel the deeds transferring properties from Parkway to the Camp Group.**

116. Plaintiff next requests that the Court amend the Final Judgment, pursuant to Rule 59(e), to order that the deeds transferring real property from Parkway to the Camp Group be cancelled. (ECF No. 278, at pp. 11–13.) Plaintiff argues that the Court has the authority to cancel the transfers of Parkway's real property to the Camp Group because the transfers were the result of constructive fraud. (*Id.*) In essence, Plaintiff requests that the Court exercise its equitable authority to declare the sales of Parkway's properties void and return the properties to Parkway as part of the remedial order in this lawsuit.

117. For the reasons discussed below, the Court, in its discretion, refuses to alter or amend the Final Judgment to void the transfers of property. *Young v. Lica*, 156 N.C. App. 301, 304, 576 S.E.2d 421, 423 (2003) ("The determination of whether to grant or deny a motion pursuant to . . . Rule 59(e) is addressed to the sound discretion of the trial court.").

118. In this action, Plaintiff never properly sought to have the Parkway Sales voided or to have the properties returned to Parkway. First, Plaintiff never made a derivative demand on Parkway to void the transfer deeds, to sue for contract rescission, nor to sue for replevin for the property transferred to the Camp Group. (Parkway Deriv. Demand Letter, ECF No. 218.2.) Second, and more significantly, Plaintiff did not bring, nor attempt to bring, any claims individually or derivatively on behalf of Parkway to rescind the Parkway Sale, and did not request the return of the properties to Parkway in his Amended Complaint. (Amend. Compl., ECF No. 28.)

To the contrary, Plaintiff alleged, and sought relief for, only the "actual, compensatory, and consequential damages" arising from the Campagnas' constructive fraud. (*Id.* at ¶ 78 and "Prayer for Relief" at p. 32.)

119. Third, Plaintiff's proposed jury instructions requested that Plaintiff be awarded money damages for the claims of constructive fraud against Parkway (ECF No. 247, at p. 19), and the jury was so instructed. Plaintiff proposed jury instructions that asked the jury to determine whether either of the Campagnas "t[ook] advantage of a position of trust and confidence to bring about the transfer of money *and real property* from Parkway to [themselves] or [their] other companies, including the Camp Group, LLC?" (ECF No. 247, at p. 17 (emphasis added).) Plaintiff also requested a damages instruction seeking "the amount of *money* that, in so far as possible, will put the companies in the same position or condition as if the fraud had not occurred. That amount may include the difference between the value of what was received and the value of what was given." (*Id.* at p. 19 (emphasis added).) The jury was instructed with the phrasing Plaintiff requested, seeking damages to make Parkway whole for transfers of real property, and the jury did, in fact, award substantial damages to Parkway. The jury found that both Richard and Rocco Campagna took advantage of their positions of trust and confidence to bring about the transfer of money and real property from Parkway to themselves or their companies, including the Camp Group, LLC, and awarded Parkway $128,757 "as damages" from each of Richard and Rocco for their constructive frauds on Parkway.

120. Plaintiff's decision to seek money damages for the constructive fraud claim against Parkway, and the jury's award of such damages, constituted an election of remedies by the Plaintiff. "The purpose of the doctrine of election of remedies is not to prevent recourse to any remedy, but to prevent double redress for a single wrong." *Smith v. Gulf Oil Corp.*, 239 N.C. 360, 368, 79 S.E.2d 880, 885 (1954); *see also Triangle Park Chiropractic v. Battaglia*, 139 N.C. App. 201, 204, 532 S.E.2d 833, 835 (2000) (stating the same). "One is held to have made an election of remedies when he chooses with knowledge of the facts between two inconsistent remedial rights." *Lamb v. Lamb*, 92 N.C. App. 680, 685, 375 S.E.2d 685, 687 (1989) (citation omitted). "A party cannot, either in the course of litigation or in dealing *in pais*, occupy inconsistent positions. . . . But the doctrine of election applies only where two or more existing *remedies* are alternative and inconsistent. If the remedies are not inconsistent, there is no ground for election." *Douglas v. Parks*, 68 N.C. App. 496, 498, 315 S.E.2d 84, 85 (1984) (citation omitted; emphasis added).

121. Here, Plaintiff brought an action for constructive fraud, which has the attendant conflicting remedies of either money damages that compensate for the fraud, or repudiation of the contract and return of the fraudulently taken property. *See Collier v. Bryant*, 216 N.C. App. 419, 434, 719 S.E.2d 70, 82 (2011) ("When a party has been fraudulently induced to enter a sale, the remedies are either to repudiate the contract or affirm the contract and recover damages caused by the fraud").

122. Throughout this litigation, Plaintiff has taken actions and made statements that effectively hedged between the two remedies. Plaintiff's failure to

make a pre-suit demand on Parkway, allege a claim for return of the Parkway properties, or seek the return of the properties in its requested relief in the Amended Complaint suggested eventual election of the remedy of damages. Plaintiff made arguments at several points, however, that suggested Plaintiff instead sought return of the real properties to Parkway through contract rescission/voiding of the deeds. Defendants moved in limine to limit Plaintiff's remedy for breach of fiduciary duty to damages, (ECF No. 217), and Plaintiff opposed that motion, arguing that Plaintiff "always" sought rescission of the property transfers and intended to seek rescission at trial. (ECF No. 232.) The Court denied Defendants' motion in limine on this issue, holding that the Court would not limit Plaintiff's presentation of evidence on this issue at trial, and would not force Plaintiff, at that stage, to elect between the conflicting remedies of damages and equitable rescission. At trial, Plaintiff finally elected, and received, the remedy of damages for the fraud, through its proposed (and accepted) jury instructions.

123. Based on Plaintiff's election at trial to seek damages for any fraudulent sales of real property, and Plaintiff's actual receipt of damages for fraudulent sales of real property, the Court concludes, in its discretion, that to the extent Plaintiff's Motion seeks an order under Rule 59(e) voiding the sales of the Parkway properties to the Camp Group and returning those properties to Parkway, the motion should be DENIED.

**D. The Court will not alter or amend the Final Judgment, to bar the Campagnas from receiving distributions from the punitive damages awarded to Parkway and Judges Road by the jury.**

124. Finally, in Plaintiff's Motion and Plaintiff's Motion to Bar Punitives, Plaintiff moves the Court under Rules 59(a)(7)–(9) and 59(e) to amend the Final Judgment to prohibit the Campagnas from receiving anything from the amounts awarded to Parkway and Judges Road as punitive damages. Plaintiff argues that since the Court has ordered dissolution of Parkway and Judges Road, the Campagnas stand to receive back as distributions the vast majority of the amounts they have been ordered to pay to Parkway and Judges Road as punitive damages. Plaintiff contends that, as the wrongdoers in this action, the Campagnas should not be permitted to "share [in] and be enriched by the very award that was designed to punish them" and "would frustrate and undermine the essential purposes of punitive damages: to punish and deter." (ECF No. 278, at pp. 13–15.) Plaintiff first raised this issue in the charge conference regarding punitive damages instructions on the second to last day of the trial. Plaintiff did not raise it as an issue in the Pre-trial Order or submit to the Court a proposed jury instruction aimed at addressing the issue. Rather, Plaintiff's proposed jury instructions provided that any award would be to the LLCs, and not to Plaintiff. (ECF No. 247, at pp. 25–28.)

125. Preliminarily, despite moving pursuant to Rules 59(a)(7)–(9), in addition to Rule 59(e), Plaintiff argues only for the Court to amend the judgment to bar the Campagnas from receiving any of the punitive damages that they must pay to Parkway and Judges Road. (ECF No. 278, at pp. 13–15.) In addition, Plaintiff

does not argue that the Court made an error of law in presenting the issue of punitive damages to the jury, nor that the verdict is contrary to existing North Carolina law. Rather, Plaintiff argues that the Court should exercise its equitable authority to prohibit the Campagnas from receiving punitive damages. Determination of whether to amend the judgment is committed to the Court's sound discretion. *Spivey & Self, Inc. v. Highview Farms, Inc.*, 110 N.C. App. 719, 728, 431 S.E.2d 535, 540 (1993) ("Motions to amend judgments pursuant to [Rule] 59 are addressed to the sound discretion of the trial court.").

126. Plaintiff does not explain how the Court should alter or amend the judgment. This Court does not have authority to simply alter or amend the amount awarded by the jury to Parkway and Judges Road as punitive damages and substitute its own amount. *Justus v. Rosner*, 802 S.E.2d 142, 152–53, 2017 N.C. App. LEXIS 448 at *24–25 (2017), *aff'd in part and rev'd in part on other grounds* by *Justus v. Rosner*, 371 N.C. 818, 821 S.E.2d 765 (2018). In *Justus*, the Court of Appeals held:

> In its order, the trial court granted plaintiff's motion for relief from the jury verdict, but did not address plaintiff's request for a new trial. Instead, the court ordered that its earlier judgment (21 October 2014) entered in accordance with the jury verdicts be amended. The trial court's amended judgment, however, changed the jury's damages verdict from $1.00 to $512,162.00, and thereby improperly ordered relief beyond the scope authorized by Rule 59(a). A trial judge has the authority and discretion to set aside a jury verdict and grant a new trial—in whole or in part— under Rule 59; however, that rule does not allow a trial judge presiding over a jury trial to substitute its opinion for the verdict and change the amount of damages to be recovered. *Bethea v. Kenly*, 261 N.C. 730, 732, 136 S.E.2d 38, 40 (1964) (per curiam) ('It is a cardinal rule that the judgment must follow the verdict, and if the jury have

given a specified sum as damages, the court cannot increase or diminish the amount, except to add interest, where it is allowed by law and has not been included in the findings of the jury.' (citations omitted))

*Id.*; *see also Industrial Circuits Co. v. Terminal Communications, Inc.*, 26 N.C. App. 536, 540, 216 S.E.2d 919, 922 (1975) ("We find nothing in the new Rules of Civil Procedure which would grant to the court the authority to modify the verdict by changing the amount of the recovery.")

127. Even if the Court had such authority, it would not be inclined to exercise it under the circumstances of this case. Damages recovered on behalf of a corporation in a derivative action generally belong to the corporation. *Ross v. Bernhard*, 396 U.S. 531, 538 (1970) ("The proceeds of the [derivative] action belong to the corporation[.]"). Plaintiff concedes that there is no North Carolina authority for prohibiting a shareholder who participated in wrongdoing against the corporation from sharing in his pro rata share of damages awarded to the corporation. Rather, Plaintiff relies on a limited number of cases from other jurisdictions, none of which involved altering a jury award of punitive damages made to a corporation in a derivative action. (ECF No. 278, pp. 17–21.)

128. More significantly, there is no reason to believe that the jury did not consider the ownership interests that Plaintiff, Richard, and Rocco, respectively held in Parkway and Judges Road in making the punitive damages awards. The jury was an educated and intelligent group of North Carolina citizens, who were, in the Court's personal observation, highly attentive during the presentation of the evidence. The parties presented evidence regarding Plaintiff's percentage of ownership in both

LLCs, as well as Richard and Rocco's ownerships. The jury was instructed that any award of punitive damages would go to the LLCs and that "you may award to Parkway and/or Judges Road an amount which bears a rational relationship to the sum reasonably needed to punish Richard Campagna or Rocco Campagna for egregiously wrongful acts and to deter him or them and others from committing similar wrongful acts." The jury could very well have used the respective ownership percentages of the Campagnas and Plaintiff in coming to their decision about an appropriate amount of punitive damages to award against the Campagnas.

129. In conclusion, to the extent Plaintiff's Motion or Plaintiff's Motion to Bar Punitives seeks an order altering or amending the Final Judgment to bar the Campagnas from receiving amounts paid as punitive damages to Parkway and Judges Road as part of distributions made by the Receiver upon dissolution of the LLCs, in the Court's discretion, the motions should be DENIED.

## C. Defendants' Motion to Amend Judgment

130. The Court next addresses Defendants' Motion to Amend Judgment. (ECF No. 272.) Defendants bring this motion pursuant to Rules 59(a) and (e) seeking: a reduction of the total punitive damages award made by the jury to Judges Road, or alternatively made by the jury to Judges Road against Richard, under G.S. § 1D-25(b); a reduction of the compensatory damages awarded by the jury to Parkway "to avoid additur without Defendants' consent"; and denial of Plaintiff's request for judicial dissolution. (ECF No. 272, at pp. 2-3.)

**1. The Court must amend the jury's punitive damages award to Judges Road to comply with G.S. § 1D-25(b).**

131.  The jury awarded a total of $600,000 in punitive damages to Judges Road: $350,000 against Richard Campagna and $250,000 against Rocco Campagna. (Pun. Dam. Verdict, ECF No. 258, at pp. 2, 3.)  The Court awarded this full amount to Judges Road in its Final Judgment.  (ECF No. 264.)  Defendants argue that the punitive damage award must be reduced to comply with G.S. § 1D-25(b), and that the cap should apply on a per-plaintiff basis, not a per-defendant basis.  (Br. Supp. Mot. to Alter or Amend, ECF No. 273, at pp. 3–4.)  The Court agrees.

132.  G.S. § 1D-25(b) states that

> Punitive damages awarded against a defendant shall not exceed three times the amount of compensatory damages or two hundred fifty thousand dollars ($250,000), whichever is greater. If a trier of fact returns a verdict for punitive damages in excess of the maximum amount specified under this subsection, the trial court shall reduce the award and enter judgment for punitive damages in the maximum amount.

G.S. § 1D-25(b).

133.  There is a dearth of law in North Carolina analyzing and applying the G.S. § 1D-25(b) punitive damages cap, and even fewer cases analyze instances like this factual scenario, where a single Plaintiff (Judges Road) receives punitive damages awards against multiple individual Defendants, who are both found liable for only nominal damages.  The Court, however, finds that the existing law is clear that the punitive damages cap must be applied per plaintiff.  *Rhyne v. K-Mart Corp.*, 149 N.C. App. 672, 686–87, 562 S.E.2d 82, 92–93 (2002) (holding, after engaging in a textual analysis of G.S. § 1D-25(b), that the North Carolina legislature intended for

the punitive damages cap to be applied on a per-plaintiff basis), *aff'd*, *Rhyne v. K-Mart Corp.*, 358 N.C. 160, 187–88, 594 S.E.2d 1, 19–20 (2004) (holding same); *Ge Betz, Inc. v. Conrad*, 231 N.C. App. 214, 24041, 752 S.E.2d 634, 653 (2013) (holding same).

134. Having determined that the Court must reduce the $600,000 punitive damage award to Judges Road to $250,000, the Court turns to the question of how to practically accomplish that reduction. The jury awarded nominal damages to Judges Road from both Richard and Rocco, but the jury's award of differing punitive damage amounts against Richard and Rocco Campagna suggests that the jury intended to punish the Campagnas unequally for their conduct. The Court will alter the Final Judgment to reduce the total punitive damage award from $600,000 to $250,000, by reducing the jury's punitive damage award against Richard from $350,000 to $145,825.00 (58.33% of $250,000), and by reducing the jury's punitive damage award against Rocco from $250,000 to $104,175.00 (41.67% of $250,000). This allocation preserves the jury's intended distribution of fault and punishment, and complies with G.S. § 1D-25(b).

135. Therefore, Defendants' Motion to Amend, seeking reduction of the jury's punitive damages award to Judges Road, should be GRANTED. The Court hereby alters the Final Judgment, to reduce the jury's award of punitive damages to Judges Road from Richard to $145,833.34. The Court also hereby alters the Final Judgment, to reduce the jury's award of punitive damages to Judges Road from Rocco to $104,166.66.

**2. The Court will not alter the judgment to reduce the jury's award of compensatory damages to Parkway.**

136. The jury awarded $128,757 to Parkway as compensatory damages against Richard, and $128,757 to Parkway as compensatory damages against Rocco.[9] Defendants argue that the jury's award "cannot be assumed to constitute separate awards and requires a new trial on damages to Parkway." (ECF No. 273, at p. 5.) Defendants contend that, in closing argument, Plaintiff's counsel told the jury that they could award the same amount of compensatory damages to Richard and Rocco and that the Court would reduce the amount, if necessary, to make certain that Plaintiff did not receive a double recovery. Neither party requested that closing arguments be transcribed, and they were not transcribed. Nevertheless, Defendants filed with their Motion to Amend Judgment affidavits from attorneys and a paralegal employed by Defendants' counsel's firm who were present in the courtroom during Plaintiff's closing arguments. Affiants James Moore, ECF No. 272.1), William G. Wright, (ECF No. 272.2, at ¶ 4), Kyle J. Nutt, (ECF No. 272.3, at ¶ 4), and Patricia Jensen, (ECF No. 272.4, at ¶ 4), state that during closing arguments, Plaintiff's counsel told the jury that they could award the same amounts of compensatory

---

[9] The Court notes that Defendants proposed that the jury be presented with separate issues regarding the liability of Richard and Rocco, (ECF No. 248, at pp. 2–4), and did not request an instruction that Richard and Rocco could be held jointly and severally liable. In addition, the jury found that Richard and Rocco were not liable for civil conspiracy with regard to Parkway. (ECF No. 257, at p. 5.) Consequently, any damage award to Parkway cannot be jointly and severally recoverable against the Campagnas. Accordingly, the primary cases relied upon by Defendants in support of their argument, *City of Richmond, Va. v. Madison Mgmt. Grp., Inc.*, 918 F.2d 438, 461 (4th Cir. 1990) and *ClearOne Commc'ns, Inc. v. Biamp Sys.*, 653 F.3d 1163, 1179 (10th Cir. 2011) are inapposite. (ECF No. 273, at p. 6.)

damages against Richard and Rocco and the Court would "sort it out" later to make certain Plaintiff did not get a double recovery.

137. Plaintiff does not address the statements made during closing arguments, and does not dispute the characterization of statements made during their closing arguments contained in the affidavits. Though there is no transcript of the closing arguments, preventing the Court from a verbatim review of the statements made, the Court's recollections of the statements made during closing arguments are in line with Defendants' characterizations. However, Defendants' counsel did not object to the statement during or immediately after Plaintiff's closing arguments to give the Court an opportunity to assess counsel's argument and provide any necessary curative instruction.

138. "As a general rule, attorneys 'are granted wide latitude in the scope of their arguments." *State v. Walls*, 342 N.C. 1, 48, 463 S.E.2d 738, 762 (1995) (quoting *State v. Zuniga*, 320 N.C. 233, 253, 357 S.E.2d 898, 911, *cert. denied*, 484 U.S. 959, 98 L. Ed. 2d 384, 108 S. Ct. 359 (1987)). "When counsel makes an improper argument, it is the duty of the trial judge, upon objection, or *ex mero motu*, to correct the transgression by clear instructions. If timely done, such action will often remove the prejudicial effect of improper argument." *Crutcher v. Noel*, 284 N.C. 568, 572, 201 S.E.2d 855, 857 (1974). In the absence of an objection by a party, the Court is not required to object and give curative statements *ex meru motu* when "the impropriety of the statements [is] not extreme." *Smith v. Hamrick*, 159 N.C. App. 696, 699, 583 S.E.2d 676, 679 (2003). A classic example of such extreme impropriety are statements

that insinuate the opposing party or opposing counsel is a liar. *See Evans v. Rutherford* Hosp., Inc., 2002 N.C. App. LEXIS 2628, *3–5 (2002) (discussing a statement made by defense counsel during closing arguments that plaintiff's counsel used a "dirty lawyer trick" to "tak[e] advantage of [a witness's] unavailability due to his 'dead son[ ]'").

139. The statements Plaintiff's counsel made during closing arguments did not rise to the level of extreme impropriety. More significantly, the combined award against Richard and Rocco is well within the range of compensatory damages sought for Parkway. Plaintiff presented evidence of Parkway's lost profits, loans and transfers of funds by the Campagnas to themselves, and losses associated with the sales of Parkway's assets. The Court instructed the jury that they could award damages to Parkway proximately caused by Richard and Rocco's "transfer of money and real property" in breach of their duties to Parkway. "A jury is presumed to follow the court's instructions[,] and we must therefore presume that the jury based its verdict on these instructions." *Riley v. Wendel*, 251 N.C. App. 452, 460, 795 S.E.2d 807, 813–14 (2016)(quoting *Nunn v. Allen*, 154 N.C. App. 523, 541, 574 S.E.2d 35, 46 (2002)) (quotation marks omitted).

140. Though the Court cannot reverse-engineer the jury's award to determine "exactly how the jury reached its overall figure," the Court concludes, based on a review of the evidence presented by Plaintiff at trial, that "the jury's verdict was consistent with [the] the evidence" of Parkway's losses presented by Plaintiff. *See Town of Beech Mt. v. Genesis Wildlife Sanctuary, Inc.*, 247 N.C. App.

444, 470, 786 S.E.2d 335, 353 (2016)("Thus, even though we cannot be sure exactly how the jury calculated its verdict, or that the verdict was calculated with mathematical certainty, we find the verdict is consistent with the evidence presented by Genesis."), *cert. allowed, rev. dismissed*, 369 N.C. 41, 787 S.E.2d 394 (2016), *aff'd*, 369 N.C. 722, 799 S.E.2d 611 (2017). The Court will not disturb the jury's compensatory damages award to Parkway.

141. To the extent Defendants' Motion to Amend Judgment seeks an order altering or amending the Final Judgment to reduce the compensatory damages awarded to Parkway, in the Court's discretion, the motion should be DENIED.

### 3. Judicial dissolution.

142. In Defendants' Motion to Amend, Defendants also challenge the Court's order granting judicial dissolution of Parkway and Judges Road on two grounds: (a) the evidence was not sufficient to support the finding that it is not practicable for the Campagnas and Plaintiff to conduct the LLC's business in conformance with the operating agreement and LLC Act; and (b) the Campagnas should have been given the opportunity to purchase Plaintiff's interests in Parkway and Judges Road. (ECF No. 273, at pp. 2–3.) Defendants also request that the Court "alter or amend its judgment to rescind the Order [*sic*] appointing a receiver on the grounds that the required hearing was not held, and the appointment is unnecessary and unwarranted." (*Id.* at p. 3.)

143. G.S. § 57D-6-02 provides, in relevant part, that

> [t]he superior court may dissolve an LLC in a proceeding brought by . . . [a] member, if it is established that (i) it is

not practicable to conduct the LLC's business in conformance with the operating agreement and this Chapter or (ii) liquidation of the LLC is necessary to protect the rights and interests of the member.

Section 57D-6-04 expressly provides, *inter ali*a:

[t]he court in a proceeding brought under G.S. 57D-6-02 to dissolve an LLC, . . . may appoint one or more persons to serve as a receiver to manage the business of the LLC pending the court's decision on dissolution and if dissolution is decreed by the court to wind up the LLC. Before appointing a person to serve as a receiver of an LLC, the court shall hold a hearing on the subject after delivering notice, or causing the party who brought the dissolution proceeding to deliver notice, of the hearing to all parties and any other interested persons designated by the court.

144. "Judicial dissolution is a remedy left largely to the discretion of the trial court, and this is so even where a party establishes a statutory ground for dissolution." *Reid Pointe, LLC v. Stevens*, 2008 NCBC LEXIS 16, at *11–12 (N.C. Super. Ct. Aug. 18, 2008) (citing *Royals v. Piedmont Elec. Repair Co.*, 137 N.C. App. 700, 704, 529 S.E.2d 515, 518 (2000)).

a. ***The evidence supports the Court's dissolution of Parkway and Judges Road.***

145. Defendants' contention that the evidence does not support the Court's conclusion that it is not practicable to conduct the business of Parkway and Judges Road bears little consideration. Preliminarily, the Court notes again that Defendants make their arguments regarding this issue, as they have numerous others, from the position that the Campagnas were the sole members of Parkway and Judges Road at

all times relevant to Plaintiff's claims. They fail to consider that it has now been determined that Plaintiff was, and still is, a member of Parkway and Judges Road.

146. For example, Defendants contend that there was no evidence of "mismanagement" of, or "financial loss" to, Parkway and Judges Road. (ECF No. 273, p. 8.) If the Campagnas were the only members of the LLCs, this might be true. However, the evidence was undisputed that the Campagnas transferred all of Parkway's assets to themselves, and sold Judges Road's most substantial asset, without seeking Plaintiff's agreement, providing Plaintiff any notice of the transfers, or providing Plaintiff an opportunity to share in the proceeds. They also dissolved Parkway without notice to Plaintiff. These actions certainly resulted in a financial loss to Plaintiff.

147. Defendants also argue there is no evidence supporting the notion that the Campagnas and Chisum could not work together in the future and continue to operate Parkway and Judges Road. Defendants, however, ignore substantial evidence introduced over the course of the seven-day trial which supported the following:

   a. The Campagnas and Plaintiff had no direct contact or communications with one another from approximately October of 2010, when Plaintiff walked out of the CCH members meeting, and the filing of this lawsuit in July 2016.

   b. The Campagnas treated Chisum as if his membership interests in Parkway and Judges Road had been extinguished beginning in July 2012, but never communicated to Plaintiff that they considered his memberships

terminated. Richard Campagna admitted Plaintiff did not fail to meet a capital call or take any specific action which would have terminated Plaintiff's membership in Parkway.

c. The Campagnas filed documents with the Secretary of State of North Carolina representing that Parkway was dissolved without notifying Plaintiff, seeking his consent, or making any distribution to Plaintiff.

d. The Campagnas ceased providing Plaintiff with required report and financial information regarding Parkway and Judges Road.

e. Plaintiff's wife, Blanche, testified that she attempted to visit the Campagna's offices sometime in 2012–2013 to get information regarding the LLCs, but that Richard ordered her to leave the premises in a threatening manner.

148. In addition to this evidence, the Court also has had opportunity to observe the parties during the course of this litigation and at trial. The level of acrimony and distrust between the Campagnas and Plaintiff is extraordinary. Following this lengthy and highly contentious lawsuit, the Court is convinced that these parties could not ever again be associated with one another in a jointly owned business, let alone conduct the business of Parkway and Judges Road.

149. Therefore, for these reasons, Defendants' Motion to Amend, on the grounds that the evidence was not sufficient to support the finding that it is not practicable for the Campagnas and Plaintiff to conduct the LLC's business in conformance with the operating agreement and the LLC Act, should be DENIED.

***b. The Court concluded that Plaintiff was entitled to judicial dissolution under G.S. § 57D-6-02(2)(i), and the Campagnas are not entitled to purchase Plaintiff's membership interests.***

150.    Defendants next argue that the Court should have ordered that the Campagnas had a right to purchase Plaintiff's membership interests in Parkway and Judges Road pursuant to G.S. § 57D-06-03(d), rather than dissolving the LLCs. (ECF No. 273, at pp. 16–17.)  G.S. § 57D-06-03(d) provides that

> [i]n any proceeding brought by a member *under clause (ii)* of G.S. 57D-6-02(2) in which the court determines that dissolution is necessary, the court will not order dissolution if after the court's decision the LLC or one or more other members elect to purchase the ownership interest of the complaining member at its fair value in accordance with any procedures the court may provide.

151.    In this case, however, the Court did not conclude that Plaintiff was entitled to dissolution under clause (ii) of G.S. § 57D-6-02(2), but instead under clause (i).  (ECF No. 264, at p. 9.)  The statute does not provide the right for other members to purchase the interests of the complaining member when dissolution is granted under clause (i).

152.    To the extent Defendants contend that the Campagnas should have the right to purchase Plaintiff's membership interest because the Court did not expressly state in the Final Judgment "that the alternative to judicial dissolution under G.S. 57D-6-03(d) is not applicable" as provided for in G.S. § 57D-6-05(a), the Court concludes that such argument is without merit.  The plain language of G.S. § 57D-6-03(d) is clear; other members only have a right to elect to purchase the complaining member's ownership interest if the Court determines that dissolution is necessary under clause (ii) of G.S. § 57D-6-02(2).  A determination that dissolution is necessary

under clause (i) does not invoke the right of other members to purchase. Accordingly, there is no need to determine if other members wish to purchase the complaining member's interest if the sole basis for dissolution is under clause (i).

153. Section 57D-6-05(a) only applies to cases in which the court has concluded that dissolution is necessary under only clause (ii) of G.S. § 57D-6-02(2), or under both clause (i) and clause (ii). In the case where clause (ii) is at least one of the bases for dissolution, the court must determine whether one or more other members wish to buy the complaining members ownership interest, and whether § 57D-6-03(d) applies. When, as here, the court determines that dissolution is necessary under G.S. § 57D-6-02(2)(i), there is no determination about the applicability of G.S. § 57D-6-03(d).

154. In addition, Defendants cite no authority to support the argument that a ministerial or scrivener's error, if the Final Judgment could be read as containing such, is grounds for upending an order of dissolution that clearly lays out that dissolution is being granted under the first clause of G.S. § 57D-6-02(2).

155. Accordingly, Defendants' Motion to Amend, seeking an order that the Campagnas be allowed to offer to purchase Plaintiff's interest in Judges Road and Parkway, should be DENIED.

c. ***The Court conducted the required hearing on appointment of the receiver.***

156. Defendants argue that the Court did not provide notice and hold a hearing before appointing the receivers over Parkway and Judges Road. G.S. § 57D-6-04(a) provides in relevant part that "[t]he court in a proceeding brought under G.S.

57D-6-02 to dissolve an LLC, . . . , may appoint one or more persons to serve as a receiver . . . if dissolution is decreed by the court to wind up the LLC. Before appointing a person to serve as a receiver of an LLC, the court shall hold a hearing on the subject after delivering notice . . . of the hearing to all parties and any other interested persons designated by the court."

157. The Court concludes that Defendants had notice, and that it held a hearing regarding appointment of the receiver that meets the intent of the statute. Plaintiff pleaded a claim for dissolution in the Amended Complaint, and the claim for dissolution was squarely before the Court at the trial of this case. The LLC Act expressly provides that the Court may appoint a receiver upon a finding that dissolution is necessary, and judicial dissolution is generally accomplished by appointment of a receiver, particularly when ordered following an adversarial proceeding. The trial provided a thorough hearing that produced overwhelming evidence establishing that the parties' distrust of and hostility towards one another required a neutral receiver to carry out the dissolution.

158. Therefore, Defendants' Motion to Amend on the grounds that the Court did not hold a hearing prior to appointing a Receiver over Judges Road and Parkway should be DENIED.

### E. *Defendants' Motion for Relief*

159. Finally, the Court addresses Defendants' Motion for Relief (ECF No. 274.) In the Motion For Relief, Defendants, pursuant to Rule 60(b)(6), "request that the Court grant relief from its Orders appointing a receiver by directing that Judges

Road and Parkway bear responsibility for payment of the receiver's fees and costs." (*Id.* at p. 2; "Orders", ECF Nos. 265 and 266.) Defendants contend that "[t]he applicable statutes do not authorize the Court to charge the fees and costs of a receiver to particular members of an LLC, but rather authorize the Court to order the fees and costs to be paid by the LLC." (ECF No. 275, at p. 3.)

160. Rule 60(b)(6) provides in relevant part that "[o]n motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons: . . . [a]ny other reason justifying relief from the operation of the judgment." Rule 60(b)(6) empowers the court to set aside or modify a final judgment, order or proceeding whenever such action is necessary to do justice under the circumstances. The test for whether a judgment, order or proceeding should be modified or set aside under Rule 60(b)(6) is two pronged: (1) extraordinary circumstances must exist, and (2) there must be a showing that justice demands that relief be granted." *Howell v. Howell*, 321 N.C. 87, 91, 361 S.E.2d 585, 588 (1987) (citations omitted)).[10]

161. Defendants first argue that G.S. § 57D-6-04(d) must be read as a strict limitation on the Court's authority to designate the party or parties that shall be responsible for payment of a receiver's fees and costs. (ECF No. 275, pp. 1–8.) G.S. § 57D-6-04(d) provides that if a court appoints a receiver to wind up the LLC, it "may order the LLC to compensate the receiver and reimburse the receiver's expenses,

---

[10] Preliminarily, Defendants do not argue how Rule 60(b)(6) is the appropriate mechanism for pursuing the particular relief requested here. They neither explain what "extraordinary circumstances" exist, nor why "justice demands" that they be relieved of the Orders. Nevertheless, the Court will address the arguments raised by Defendants.

including the fees and expenses of attorneys and other professionals retained by the receiver." Defendants contend that this language is not permissive, but, rather that it limits the Court to ordering that the LLC pay the receiver's fees because it does not expressly provide for payment by any other party.

162. The Court disagrees. First, the word "may" is most logically interpreted as providing the Court with discretion, not as limiting its authority. "[I]t is well established that the use of the word 'may' in a statute implies the use of discretion." *In re J.R.*, 250 N.C. App. 195, 199, 791 S.E.2d 922, 925 (2016) (*citing In re Hardy*, 294 N.C. 90, 97, 240 S.E.2d 367, 372 (1978) ("Ordinarily when the word 'may' is used in a statute, it will be construed as permissive and not mandatory.")).

163. Second, reading G.S. § 57D-6-04(d) in the manner suggested by Defendants would fly in the face of the broad authority vested in the Superior Courts to appoint receivers and craft appropriate equitable orders implementing receiverships. A receivership is an equitable remedy. *See Sinclair v. Moore Cent. R.R. Co.*, 228 N.C. 389, 395, 45 S.E.2d 555, 560 (1947). "Courts of equity have original power to appoint receivers and to make such orders and decrees with respect to the discharge of their trust as justice and equity may require." *Lambeth v. Lambeth*, 249 N.C. 315, 321, 106 S.E.2d 491, 495 (1959) (citing *Skinner v. Maxwell,* 66 N.C. 45, 47–48 (1872) and *Lasley v. Scales*, 179 N.C. 578, 580, 103 S.E.2d 214, 215 (1920)). *See also, Lowder v. All Star Mills, Inc.,* 301 N.C. 561, 576, 273 S.E.2d 247, 256 (1981) ("[I]t is elementary that a Court of Equity has the inherent power to appoint a receiver, notwithstanding specific statutory authorization."); *Barnes v. Kochhar,* 178

N.C. App. 489, 499, 633 S.E.2d 474, 480 (2006) ("A receiver may be appointed by a trial court both pursuant to statute and the trial court's inherent authority."). The Court concludes it is not so limited in determining how the receiver is to be compensated in this matter.

164. In this case, the Court exercised its discretion in light of all the facts to require that Richard and Rocco pay the receiver's fees and costs. First, it was the Campagnas' wrongful conduct that necessitated the dissolution of Parkway and Judges Road, and appointment of the Receiver. The jury found that Richard and Rocco engaged in constructive frauds against Parkway and Judges Road. Given their misconduct and the level of mistrust it created between the Campagnas and Plaintiff, the Court concluded that the Campagnas could not be left in charge of operating the LLCs during the wind up and liquidation processes.

165. In addition, the Campagnas dissolved Parkway during the period that the Campagnas improperly treated Plaintiff as if he was not a member. There are no current Parkway assets from which the Receiver could be paid, aside from the jury's award of damages in the judgment, which the Receiver will collect from Richard and Rocco. Requiring the Receiver to be paid from Judges Road's assets, and from Parkway's judgment award, would further diminish the assets to be distributed to the members, including Plaintiff, upon liquidation. This too would be inequitable under the circumstances of this case.

166. Having thoroughly reviewed the facts, the applicable law, and the arguments of counsel, the Court concludes that it properly exercised its authority and

discretion in requiring the Campagnas to pay the Receiver's fees and costs. The Motion for Relief should be DENIED.

## IV.    CONCLUSION

THEREFORE, IT IS ORDERED that the parties' post-trial motions are hereby decided in the following manner:

1. Defendants' Motion to Amend, seeking a reduction of the jury's punitive damages award to Judges Road, is GRANTED.

   a. Paragraph (k) is hereby amended to read as follows:

   k. That judgment is entered for Plaintiff on Judges Road's claim for punitive damages against Defendant Richard Campagna, and that Defendant Richard Campagna shall pay to Judges Road punitive damages in the amount of $145,825.00, with interest at the legal rate from and after August 16, 2018, until judgment is satisfied.

   b. Paragraph (m) is hereby amended to read as follows:

   m. That judgment is entered for Plaintiff on Judge Road's claim for punitive damages against Defendant Rocco Campagna, and that Defendant Rocco Campagna shall pay to Judges Road punitive damages in the amount of $104,175.00, with interest at the legal rate from and after August 16, 2018.

2. Except as specifically noted above, the Post-Trial Motions are DENIED.

SO ORDERED, this, the 25th day of April, 2019.

<div style="margin-left: 40%;">

 /s/ Gregory P. McGuire   
Gregory P. McGuire
Special Superior Court Judge for
Complex Business Cases

</div>